## LOEB *v.* UNITED STATES (No. 69).[1]

1. EXAMINATION BY BOARD OF THREE GENERAL APPRAISERS REQUIRED.

The changes made in the law govering appraisements of merchandise at ports of entry, as these changes appear in sections 12 and 13, customs administrative act of 1890, do not warrant the inference that it is unnecessary in reappraisement proceedings for a board of three general appraisers to examine the samples of the merchandise when reappraised.

2. SAMPLES IN PUBLIC STORES.

Packages or samples selected by the collector and deposited in public stores are to be deemed as under the immediate continuing control and in the continuing physical custody of the appraiser, the general appraiser, or Board of General Appraisers, respectively, before whom a case may be pending in which these samples have been selected and detached for the purpose of an examination or of inspection and appraisement.

3. SAME—EXAMINATION NECESSARY.

Irrespective of the particular designation of the official or officials to whom "a case" is submitted in proceedings to appraise merchandise, it can not be said "the case" has been examined when the exhibits or samples deposited as a part of the case have not been examined; and the statute is mandatory that on appraisement or reappraisement the exhibits or samples shall be examined.—Erhardt *v.* Schroeder (155 U. S., 124; United States *v.* Ranlett, 172 U. S., 132) distinguished.

4. WHEN IT APPEARS ALL SAMPLES WERE EXAMINED.

In the case at bar, it being fairly established by the evidence that the number of packages required by law were sent to the public stores for examination and that these were in due course examined by the reappraisement board, their finding must be here affirmed.

United States Court of Customs Appeals, April 3, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6738 (T. D. 28849).

[Affirmed.]

*Curie, Smith & Maxwell (W. Wickham Smith* of counsel) for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The question here presented is whether the failure of a board of three general appraisers in a reappraisement proceeding to examine the samples designated by the collector under the provisions of section 2901 of the Revised Statutes "for examination" renders the decision of the board void for want of jurisdiction.

It is not made clear by the record exactly when the reappraisement was held, but there is sufficient to determine that it was sometime during the year 1899.

The Board of General Appraisers held that such failure did not invalidate the appraisement.

---

[1] Reported in T. D. 31479 (20 Treas. Dec., 650).

The conclusion was based largely upon a comparison of section 13 of the customs administrative act of 1890 with section 2614 and 2930 of the Revised Statutes.

Section 2930 of the Revised Statutes, which was repealed by section 13 of the customs administrative act, provided:

SEC. 2930. If the importer, owner, agent, or consignee, of any merchandise shall be dissatisfied with the appraisement, and shall have complied with the foregoing requisitions, he may forthwith give notice to the collector, in writing, of such dissatisfaction; on the receipt of which the collector shall select one discreet and experienced merchant to be associated with one of the general appraisers wherever practicable, or two discreet and experienced merchants, citizens of the United States, familiar with the character and value of the goods in question, to examine and appraise the same, agreeably to the foregoing provisions; and if they shall disagree, the collector shall decide between them; and the appraisement thus determined shall be final and be deemed to be the true value, and the duties shall be levied thereon accordingly.

Section 2614 of the Revised Statutes, pertinent to oaths of appraisers, provides as follows:

SEC. 2614. * * * All other appraisers, and all resident merchants appointed according to law to act as appraisers, shall severally take and subscribe an oath diligently and faithfully to examine and inspect such merchandise as the collector may direct, and truly to report, to the best of their knowledge and belief, the true value thereof.

Section 13 of the customs administrative act, in so far as pertinent, provides:

SEC. 13. * * * If the collector shall deem the appraisement of any imported merchandise too low, he may order a reappraisement, which shall be made by one of the general appraisers, or if the importer, owner, agent, or consignee of such merchandise shall be dissatisfied with the appraisement thereof, and shall have complied with the requirements of law with respect to the entry and appraisement of merchandise, he may within two days thereafter give notice to the collector, in writing, of such dissatisfaction, on the receipt of which the collector shall at once direct a reappraisement of such merchandise by one of the general appraisers. The decision of the appraiser or the one acting as such (in cases where no objection is made thereto, either by the collector or by the importer, owner, consignee, or agent), or of the general appraiser in cases of reappraisement, shall be final and conclusive as to the dutiable value of such merchandise against all parties interested therein, unless the importer, owner, consignee, or agent of the merchandise shall be dissatisfied with such decision, and shall, within two days thereafter, give notice to the collector, in writing, of such dissatisfaction, or unless the collector shall deem the appraisement of the merchandise too low, in either case the collector shall transmit the invoice and all the papers appertaining thereto to the board of three general appraisers, which shall be on duty at the port of New York, or to a board of three general appraisers who may be designated by the Secretary of the Treasury for such duty at that port or at any other port, which board shall examine and decide the case thus submitted, and their decision or that of a majority of them shall be final and conclusive as to the dutiable value of such merchandise against all parties interested therein. * * *

The board attached a controlling significance to the absence of the requirements under section 13, which appeared in said sections 2930 and 2614, that the merchant appraiser should be a "discreet and experienced merchant * * * familiar with the character

and value of the goods in question," and should "examine and appraise the same," and, of section 2614, providing that all appraising officers, including the general appraiser and the merchant appraiser should "take and subscribe an oath diligently and faithfully to *examine* and inspect such merchandise."

Aside from other considerations later mentioned, we are unable to follow in that course of reasoning whereby the conclusion is reached that because the earlier statute required in express terms that a merchant appraiser familiar with the merchandise should examine the same and there was substituted in lieu thereof a Government official surrounded by no statutory requirement of familiarity with the merchandise, that solely by reason of that change the latter was not required to examine it.

As between the two there was less rational requirement for the merchant appraiser selected because familiar with the particular class of merchandise to examine it, in order to reach a fair conclusion, than there was that a general appraiser of whom no knowledge upon the subject is required by statute should do so. Every rationale argues the contrary.

Nor do we conclude from the general oath of the general appraisers, appointed under the customs administrative act, instead of the special oath of appraisers under section 2614 to "examine and inspect" the merchandise, that thereby the former are relieved of that duty. The sufficient reason for the different oath is apparent from the duties of the general appraiser as prescribed by section 12 of the act, giving him jurisdiction over *both* "appraisement *and classification*" cases. The latter are appeals from the collector; the former from the appraiser. The collector takes no such oath, and neither he nor the general appraiser is or should be bound to examine the merchandise in classification cases. Hence, such an oath by a general appraiser performing both classes of duties would result in the utmost idle confusion. In the presence of this logical and legal reason, we perceive no inference whatsoever from this change relieving the general appraiser from the duty of examining the merchandise in reappraisement cases.

The method of appointment of former general appraisers, as provided by section 2608 of the Revised Statutes, and of merchant appraisers as prescribed by section 2930 of the Revised Statutes, was changed by section 12 of the customs administrative act, and this is emphasized by the board as supporting their conclusions.

There was substituted in the place of the temporary and skilled merchant in the particular case, on the one hand, and the general appraiser selected without reference to any statutory qualifications, and the collector in case of a disagreement between the others, likewise selected without any statutory qualifications, general appraisers,

whose tenure of office under said section 12 was practically for life and who were selected without any statutory qualifications. The only pertinent significance in these changes, so far as the qualifications of the appraising officers are concerned, which we are able to glean from these changes of law in no wise affects the issue here. It was never required by the law of his selection or of the oath of office of the collector as official arbitrator of reappraisement cases that he should be especially skilled in the merchandise to be appraised or that he should examine the merchandise.

Indeed Congress must have considered that in the appointment of men of high standing and ability, practically for life, whose almost daily duties included the appraisement of every variety of merchandise and contact with the importing trade, the acquisition of such skill in that pursuit and such vast information and knowledge as must be accumulated in the exercise of that function as would in time constitute them equally great experts in every line of that work with any merchant or merchants, however skilled in his particular line. This is the view taken by the Supreme Court of the United States, quoting with apparent approval from the Customs Regulations. Origet v. Hedden (155 U. S., 228–237).

Omission of these qualifications of familiarity with the merchandise in appraisers does not, therefore, argue that Congress intended appraisement without regard to the appraisers being or acquiring familiarity therewith, but substituted a better method of such familiarity; and the best method whereby this substituted intelligence could be assured was by constant examination of the goods.

It will aid in an intelligent consideration of the case, we think, to recite as briefly as possible the procedure in appraisements and appeals therefrom to final conclusion.

Section 7 of the customs administrative act of 1890 provides:

SEC. 7.  *  *  *  the collector  *  *  *  *shall cause* the actual market value or wholesale price of such merchandise to be appraised.  *  *  *

Appraisement, therefore, in the first instance, is initiated by the collector under section 2901 of the Revised Statutes by "*designating on the invoice*" 1 package of every invoice and 1 package at least of every 10 packages of merchandise "to be opened, examined, and appraised," and that section provides the collector "shall order the packages so designated to the public stores for examination." He then transmits the invoice containing this designation to the appraiser. The local appraiser then makes return of his appraisement to the collector. Section 13 of said act provides that if either the collector or owner is dissatisfied appeal may be taken to a general appraiser. This appeal is taken, if by the importer, by giving "notice to the collector  *  *  *  on the receipt of which the collector shall at once direct a reappraisement of such merchandise by

one of the general appraisers." If the importer is dissatisfied with this decision he will "give notice to the collector, in writing, of such dissatisfaction, * * * in either case the collector shall transmit the invoice and all the papers appertaining thereto to the board of three general appraisers, * * *." In both cases return of the decision, as stated, is made to the collector.

The locus of the merchandise meanwhile was also provided.

At the time of this appraisement, and there have been no material changes since, the provisions of statutory law affecting the custody and control of the merchandise itself and in part the methods of appraisement were sections 2899 of the Revised Statutes and 2901 of the same, which read:

SEC. 2899. No merchandise liable to be inspected or appraised shall be delivered from the custody of the officers of the customs until the same has been inspected or appraised or until the packages sent to be inspected or appraised shall be found correctly and fairly invoiced and put up, and so reported to the collector. The collector may, however, at the request of the owner, importer, consignee, or agent, take bonds, with approved security, in double the estimated value of such merchandise, conditioned that it shall be delivered to the order of the collector, at any time within ten days after the package sent to the public stores has been appraised and reported to the collector. If in the meantime any package shall be opened, without the consent of the collector or surveyor given in writing, and then in the presence of one of the inspectors of the customs, or if the package is not delivered to the order of the collector, according to the condition of the bond, the bond shall, in either case, be forfeited.

SEC. 2901. The collector shall designate on the invoice at least one package of every invoice, and one package at least of every ten packages of merchandise, and a greater number should he or either of the appraisers deem it necessary, imported into such port, to be opened, examined, and appraised, and shall order the package so designated to the public stores for examination; and if any package be found by the appraisers to contain any article not specified in the invoice, and they or a majority of them shall be of opinion that such article was omitted in the invoice with fraudulent intent on the part of the shipper, owner, or agent, the contents of the entire package in which the article may be shall be liable to seizure and forfeiture on conviction thereof before any court of competent jurisdiction; but if the appraisers shall be of opinion that no such fraudulent intent existed, then the value of such article shall be added to the entry, and the duties thereon paid accordingly, and the same shall be delivered to the importer, agent, or consignee. Such forfeiture may, however, be remitted by the Secretary of the Treasury on the production of evidence satisfactory to him that no fraud was intended.

It will be noted that section 2901 of the Revised Statutes requires that after designation upon the invoice of the packages for examination the collector "shall order the package so designated *to the public stores* * * *."

There was no further requirement until after the creation of the Board of General Appraisers. It will be noted that the statute did not then, nor does any statute at present, require that the packages for examination be sent to any particular appraiser, general appraiser, or Board of General Appraisers. But it seems that Congress deemed, by section 2901, that when the requisite packages were sent to the

"public stores" they were equally available for the purposes of examination by the local appraiser, the general appraiser, and the Board of General Appraisers, and were deemed in their immediate custody for that purpose. That this was true is borne out by T. D. 10355, promulgated November 1, 1890, and which was in effect at the time of the appraisement of this merchandise. That Treasury regulation provided, and at that time the Board of General Appraisers was bound by the regulations of the Treasury affecting reappraisements, that after notice of appeal in a reappraisement case the packages designated by the collector under section 2901 could not be taken from the public stores *without written consent of the general appraiser* having the case pending before him, or, if on appeal to the Board of General Appraisers, of the Board of General Appraisers. That now is and has been the case ever since the organization of the Board of General Appraisers. The inference, therefore, is irresistible that when the packages were sent to the public stores they were under the law expressly provided in the physical custody and immediate control of the appraiser, general appraiser, or board of three general appraisers, respectively, before whom the case was pending, for the purposes of examination, inspection, and appraisement.

As all notices of appeal in reappraisement cases were given and returns made under section 13, *supra*, to the collector, the primary custodian of the merchandise, he was thus advised of their status and control. The statutory delivery of the merchandise to the local appraiser of the packages for examination being the same as that to the general appraisers, and it being admitted that examination by the local appraiser is enjoined by statute and that he does examine them in that status, we can not escape the conclusion that Congress has equally provided by this statute their delivery to the general appraisers available for all purposes of examination.

This conclusion, it seems to us, is fully confirmed by the provisions of section 2901, Revised Statutes, as will be shown later.

The board in this case held that because section 13 of the customs administrative act, which is largely confined to the appellate procedure in reappraisement cases, stated only that the collector, upon notice of appeal, "shall transmit *the invoice and all the papers* appertaining thereto to the board of three general appraisers, * * * which board shall *examine and decide the case* thus submitted," and made no provision for the transmission of the packages, that the omission was of such significance as to warrant the conclusion that Congress did not intend to require the samples or packages as a part of "the case" as made up on appeal, and quoted the provisions relating to classification cases in support of that view.

We can not concur in this conclusion, in the light of what has been said, and of what is provided by other provisions of the law, for the

reason that the statutes had already provided for the transmission of samples or packages to the board, and when the notice of appeal was filed immediate custody thereof was *ipso facto* surrendered by the collector to the Board of General Appraisers having jurisdiction of the case, and they could not be withdrawn from the custody of the board without their permission. (See T. D. 10355.)

It would have been an idle requirement, after the Congress had provided in section 2901 that certain packages should be sent "to the public stores," and "a greater number should he or *any. of the appraisers* deem it necessary," thus not only putting the selected packages, but making the whole cargo subject to their order, to have said anything whatsoever upon the subject of the packages. They were already at the place where they were to be examined or made subject to the order of the appraisers.

Strong confirmation that the Congress in section 13 contemplated that, per force of law, the samples or exhibits were before the Board of General Appraisers in reappraisement cases is had by adverting to the language of section 14, providing for appeals in classification cases. After notice in such cases, there being no other provision of law relating to the delivery of samples or exhibits to the Board of General Appraisers, it is expressly provided:

Upon such notice and payment, the collector shall transmit the invoice and all the papers *and exhibits* connected therewith to the board of three general appraisers.

In this view it can not be said that there is no provision of statute which commands a board of three general appraisers to examine the merchandise, for section 13 says as to the board of general appraisers on this appeal, "which board shall *examine* and decide the case thus submitted." "The case" thus submitted is constituted of the papers sent up by the collector, including, as a statutory part thereof, the invoice, upon which invoice is designated by the collector the packages selected under section 2901 of the Revised Statutes "to be opened, examined, and appraised," and which are then and there in the immediate custody of the board. The packages are expressly referred to and identified by the invoice, marked upon the face thereof by the collector, and they are, therefore, the exhibits which form an integral part of the "case" submitted to the board for decision concerning which it is expressly prescribed in the statute that they shall "examine" the "case" thus submitted.

We do not think it could be said that "a case" submitted for decision, whatever function the deciding official is exercising, can be said to have been "examined" when the exhibits referred to in the documents and which are the real subject of the proceeding have not been examined.

This is particularly true in the light of the injunction provided by Congress in section 10 of the customs administrative act enacted at

the time of the creation of this board that "the appraisers of the United States, and every of them, and every person who shall act as such appraiser, shall   *   *   *   by *all* reasonable ways and means in his or their power,   *   *   *   appraise" the merchandise.

We have already stated that while the board in this case based its conclusions solely upon the language of section 13 of the customs administrative act, that section provides principally the procedure upon appeal in reappraisement cases.

The duties, limitations, and methods of appraisement of all appraising officers, including general appraisers, are, in part, described in other statutes. Section 2899 of the Revised Statutes, quoted *supra*, providing for the retention of all imported merchandise duly appraised and otherwise found correct; section 2901 of the Revised Statutes, quoted *supra*, providing that the collector shall select certain packages and forward them to the public stores "to be opened, examined, and appraised;" and section 2902 of the Revised Statutes providing for the mode of appraisal by all appraising officers were not repealed, expressly or by implication, by the enactment of the customs administrative act of 1890, of which said section 13 forms a part.

Said sections 2899 and 2901 are uniformly read by the courts in connection with the customs administrative act as not having been repealed by implication.

Section 2902 of the Revised Statutes was not only not repealed, but, in substantially the identical form as it existed before and as it has been construed by the courts for many years, was expressly reenacted and included as section 10 of the customs administrative act.

These provisions are, and uniformly have been, held, together with that act, to prescribe the duties and methods of all appraisers in reappraisement cases.

So, leaving aside consideration of the provisions of the customs administrative act, we think these provisions of the Revised Statutes make it absolutely mandatory in the plain and unmistakable language of the statute that the merchandise should be examined when appraised by a board of appraisers.

It will be observed upon reading together the three sections that the statutory duty, so far as an examination of the packages is concerned, is not satisfied by the ascertainment alone of a unit or gross value, but that it must be ascertained and found that the exact quantity of merchandise is involved. It seems trite to say that in order to properly appraise an importation of merchandise it is primarily necessary to ascertain the amount or quantity of that merchandise. An examination of the statutes discloses that in every of the cognate provisions the duty of that ascertainment is equally enjoined upon the appraisers with and as the basis of the ascertainment of the unit and aggregate value.

Section 2899 provides that no merchandise shall be delivered out of the customs custody until it shall have been "inspected or appraised," or "until the packages sent to be inspected shall be found correctly and fairly invoiced and put up, and so reported to the collector;" and, to render this ultimately possible, the same section enjoins upon the collector, either physically or by bonded control, possession of all the imported merchandise until it is not alone "examined and appraised" but also until it is found "correctly invoiced and put up."

We take it that this statute applies equally to all appraising officers, including general appraisers, for it is self-evident that where an appeal is taken from the appraiser and then to the general appraiser and then to a board of three general appraisers, until the board acts they are not "appraised." Each appeal suspends the appraisement from which it is an appeal, and then there is no appraisement until one of them becomes final for lack of appeal or the possibility of such.

And, so again, in section 2901, which, obviously by its terms, is extended to all the appraising officers, it is therein provided that the collector shall select "one package at least of every ten packages of merchandise, and a greater number should he or *either of the appraisers* deem it necessary, \* \* \* to be opened, examined, and appraised." Then the statute makes for the further injunction "if any package be found by the *appraisers* to contain any article not specified in the invoice" certain procedure shall be had.

The plain import of this provision of law is, in conjunction with section 2899, that the quantity of the merchandise as well as and as the basis for the aggregate value shall be ascertained by the appraising officers, and that by the opening and the *examining* of the packages.

It being true that in the pursuance of an appeal all appraisements below are set aside and the proceeding an appraisement *de novo*, we do not see how it could be said that the appraising officers who made, so far as future procedure is concerned, the only appraisement in the case, to wit, the Board of General Appraisers, have appraised according to the injunction of the statute, if they have not obeyed its injunction as to quantities and examined the merchandise.

But it has been contended that this section, in that it enjoins an examination of the merchandise, is directory and not mandatory. This contention is based upon two decisions of the Supreme Court of the United States, Erhardt *v.* Schroeder (155 U. S., 124, 130), and United States *v.* Ranlett (172 U. S., 132, 142). The Ranlett case, on the point stated, followed the Schroeder case. Both cases differ from this in that the real question at issue there was one of classification rather than appraisement. That fact is expressly mentioned in each case. In the Schroeder case the Supreme Court pointed out that in that case, the question being one of classification, the package, though

not examined by the appraising officers, could, under the statutes, be produced before the board, and that hence the importer was not deprived of the statutory right previously denied to have them examined. The Ranlett case was identically the same. The reason supporting those decisions does not exist here, and the Supreme Court distinctly took occasion to intimate in the Schroeder case that in an appraisement proper the view of the court would be different, and therefore, as to that class of cases, that section 2901 must be held mandatory. The court said:

> If the dutiable character of the goods in the present case were to be determined by *value*, the question of the effect of section 2939 might be of consequence to the importers, since in that event the value fixed by the appraisers, under section 2930, Revised Statutes, relating to appeals from appraisements, would be final, unless the appraisement were in some respect unlawful.

This is distinctly an appraisement case, one of value, and there is no opportunity here, nor was there anywhere, after the decision of the board of three general appraisers, to have his goods examined, in the ascertainment of their value. In that class of cases it seems to us the plain intimation of the Supreme Court, and the logical sequence of these decisions, that in strictly appraisement cases the provisions of section 2901 of the Revised Statutes are mandatory.

The Supreme Court in the case of Greely's Administrator *v.* Burgess (59 U. S., 18 How., 413, 416) had occasion to review the identical provision as a statute at large (5 Stat. L., 563–565, secs. 16, 17, 21). That was strictly an appraisement case. The court said, speaking of the powers of appraisers:

> All their powers are derived from these acts, and it is their duty to observe the restrictions and to obey the directions they contain. In the present instance, there was a neglect of the positive mandate "to open, examine, and appraise one package of every invoice, and 1 package, at least, of every 10 packages of goods, wares, and merchandise"; and the jury have found that the inquiry they made was not in substance nor in effect an equivalent for such an examination.

The precise language of section 2901 in this case, where it was not open to the importer by further procedure to have further examination, was before the court for consideration, and the court held that it rendered the appraisement illegal. This differentiation reconciles all Supreme Court decisions on this point.

But even more pertinent is section 10 of the customs administrative act, formerly section 2902 of the Revised Statutes. This section provides:

> SEC. 10. That it shall be the duty of the appraisers of the United States, *and every of them*, and *every person who shall act as such appraiser*, or of the collector, as the case may be, by all reasonable ways and means in his or their power, to ascertain, estimate and appraise (*any invoice or affidavit thereto or statement of cost, or of cost of production to the contrary notwithstanding*) the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets

of the country whence the same has been imported, *and the number of yards, parcels, or quantities, and actual market value or wholesale price of every of them*, as the case may require.

Here is a statutory injunction enacted as a part of the act creating the Board of General Appraisers. It can not be said from the broad scope of its language and the fact of its reenactment as a part of that act but that it applies to all appraising officers. Aside from the duty to "ascertain, estimate, and appraise the actual market value" of the merchandise, it especially enjoins that they shall ascertain, estimate, and appraise "*the number of yards, parcels, or quantities and actual market value or wholesale price of every of them.*"

Let it be particularly noted that this duty is enjoined, "any invoice or affidavit thereto or statement of cost or of cost of production to the contrary notwithstanding." It seems to us that the plain, unavoidable import of this section is to the effect that the appraisers must determine the market value, the quantity, and the number of parcels of the merchandise, regardless of the invoice or the evidence accompanying the same. They must do this "by *all* reasonable ways and means in * * * their power." It seems to us that the only reasonable way, certainly one of "all" reasonable ways, to ascertain the quantities of merchandise and the number of yards and parcels is by the examination of the goods themselves or samples when authorized. Particularly is this true when they must do so without regard to the invoice, statement of cost, or the cost of production.

This provision, in substantially the form reenacted as section 10 of the customs administrative act and sections 2899 and 2901 of the Revised Statutes, has been the subject of discussion by the courts in numerous decisions upon the precise point at issue here.

The reasoning in Ystalifera Iron Co. *v.* Redfield (23· Fed. Rep., 650) seems particularly in point. The court rested the decision in that case upon section 2901, stating:

The decision by the reappraisers of the question what markets of the country from which the goods have been imported are the principal ones for the goods in controversy and their appraisal, made in accordance with the examination which is required by statute (act Aug. 30, 1842, 5 Stat. L., 563–565, secs. 16, 17, 21), required that one package in every ten packages of the merchandise to be appraised must be designated by the collector and must be examined, and there must be, in substance and effect, a faithful personal examination by the reappraisers of the number of packages which are required to be examined and appraised, or such an examination of the samples drawn from such packages as is equivalent to an examination of the packages themselves. If such an examination is not had, the reappraisal is invalid, and the excess of duty or the penalty that is imposed by reason of any increased valuations above those stated in the invoice is illegally imposed. Greely's Administrator *v.* Burgess (18 How., 413); Burgess *v.* Converse (2 Curt. C. C., 216); Stairs *v.* Peaslee (18 How., 521); Belcher *v.* Linn (24 How., 508).

The United States Circuit·Court of Appeals for the Second Circuit in United States *v.* Beer (150 Fed. Rep., 560), having the same point

under consideration, affirmed the decision of the Board of General Appraisers that an appraisement without the samples before the local appraiser was invalid.

In United States v. Loeb (107 Fed. Rep., 692) the same court had previously considered the subject.   It stated:

Repeated decisions of the circuit and supreme courts are to the effect that a neglect of the appraisers to take the means required by statute for an examination of the goods in question invalidates the appraisement.  Converse v. Burgess (18 How., 413, 15 L. Ed., 455); Oelbermann v. Merritt (123 U. S., 356; 8 Sup. Ct., 151, 31 L. Ed., 164).

The court held in that case that the appraisement made by a board of three general appraisers appointed under the customs administrative act of 1890 was void for want of jurisdiction.

We have already commented upon the case of Converse v. Burgess (18 How., 413), decided by the Supreme Court of the United States. In Oelbermann v. Merritt (123 U. S., 356, 366) the same court approved the case of Converse v. Burgess, quoting from it with approval.   The court continued:

If such nonobservance of the positive mandate of the statute in regard to the examination of so many of the original packages as the statute specified, as a condition on which the validity of the assessment depended, vitiated the appraisement, the nonobservance of the statute in regard to the qualifications of the merchant appraiser must be regarded as equally one of the conditions on which the validity of the assessment depends.   *   *   *

The Supreme Court here points out that it is not alone necessary that the appraiser be qualified, but that the other provisions of the statute be followed.

We have already commented upon Erhardt v. Schroeder (155 U. S., 124, 130) and United States v. Ranlett (172 U. S., 132, 142).   It might be well to note that in the Ranlett case the Supreme Court held in favor of the importer, specifying in the opinion of the court that he was entitled to relief, among other reasons, because "the statute was not strictly pursued in the examination."

The Board of General Appraisers reached its conclusion in the case at bar upon the theory of the statute and purposes of Congress expressed in this language:

If it is absolutely essential to the validity of such a proceeding that samples should be before the board, it must be because the statute enjoins the examination of the merchandise, or there is something inherent in the proceedings that makes the presence of such samples a necessity.   The ancient theory was that the administrative department of government should decide all questions relative to the assessment and collection of taxes.   Under the benign influence of republican institutions the tendency in modern times has been toward the breaking down and destruction of many of the old rules relative to the power of the sovereign which originated under monarchical governments, and the creation of tribunals wherein an impartial and judicial decision of every question that may arise between the citizens and the government might be had.

We are unable to perceive the application or the force of this reasoning in the particular case.   A reappraisement case is made before a

board of general appraisers. That case is made up of the invoice, other papers, and such testimony as may be gathered in the course of appraisement proceedings under section 16 of the customs administrative act, and packages or samples of the merchandise identified by and referred to in the invoice and possibly the testimony. The only question here is, Shall the Board of General Appraisers examine a part of this "case" and not examine the goods themselves, the corpus of the case, or shall they examine the whole of the case looking at the goods as well as the invoice and the testimony? We do not think that it was the purpose of the customs administrative act of 1890 to relax the rule of a century and to permit of appraisements, or the decision of a controversy between citizens and the Government, by permitting the deciding tribunal to ignore a very important part of the "case." This would seem retrogression rather than advance.

The wisdom of this requirement is demonstrated by this record, for an examination of some of the packages, the goods being embroideries, by the general appraiser showed the invoices incorrect in many particulars, and the amount of duties due admittedly different from the entered and invoice values, which could only be shown by an examination of the goods.

And, as stated by the Supreme Court in Greely *v.* Thompson *et al.*, *supra*:

\* \* \* An article may be barely merchantable, and yet not be worth so much as one that is not only merchantable, but on the brink of being better than merchantable. A personal examination, therefore, is proper for making such discriminations in quality and value.

The determination of job lots, primary and secondary qualities of goods, and in such cases as these the proper invoicing according to stitch rate of embroideries, demonstrates the wisdom of this requirement.

We think that the history of legislation in customs matters indicates the purpose of Congress to make for prompt as well as fair adjustment of issues between the taxpayer and the Government. We conceive of no right of the individual which suffers here; but even so, while the rights of the individual are ever to be regarded, the right of the Government to collect the necessary revenues for its conduct and maintenance is paramount. The rights of the individual must always yield to the rights of the many.

The Supreme Court of the United States has aptly expressed itself upon the precise question of having reappraisement proceedings determined by judicial procedure. In Cheatham *et al. v.* United States (92 U. S., 85), that court said:

All governments, in all times, have found it necessary to adopt stringent measures for the collection of taxes and to be rigid in the enforcement of them.

These measures are not judicial; nor does the Government resort, except in extraordinary cases, to the courts for that purpose.

In Auffmordt *v.* Hedden (137 U. S., 310, 323) the Supreme Court said:

We are of the opinion, under the statute, the question of the dutiable value of the merchandise is not to be tried before the appraisers as if it were an issue in a suit in a judicial tribunal. Such is not the intention of the statute, and the practice has been to the contrary from the earliest history of the Government. No government could collect its revenues or perform its necessary functions if the system contended for by the plaintiffs were to prevail.

See, also, Origet *v.* Hedden (155 U. S., 238).

While appraisements constitute but a minor portion of the duties of the general appraisers, whose duties and procedure in the main and on the classification side are strictly judicial, nevertheless their character being defined by statute, their performance by judicial officers can not change that character. In many instances duties ministerial and otherwise are cast upon judicial officers. It does not necessarily follow that the function performed takes character from the officer who performs it. It takes its character from its first performance by the local appraiser, and we do not find that character changed in its last solution.

Section 12 of the customs administrative act in prescribing the duties of general appraisers states that they shall have supervision over appraisements and classifications. Their jurisdiction of appraisements is essentially *de novo.* It has been held that there is no requirement to advise the board which party is the appellant in such cases; that their duties are to ascertain market value, etc., of the goods, and it does not concern them whether the collector or the importer is the appellant. This is not a condition which appertains to a judicial function.

The character of the duty seems to be more aptly expressed by its definition. They are to "appraise" merchandise, and in this capacity are "appraisers." An appraiser, as defined by Burrill's Law Dictionary, is—

A person appointed by competent authority to ascertain and state the true value of property *submitted to his inspection,* and who is usually sworn to perform such duty.

The Supreme Court of the State of Iowa has held in Vincent *v.* German Insurance Co. (120 Iowa, 272) in effect that—

To appraise is to estimate value, and such is the duty of arbitrators appointed to ascertain and appraise "the sound value of, and the loss upon, the property damaged," and it requires the arbitrators to make an appraisement and not to hear evidence. (See Words and Phrases, Art. "Appraisers.")

It was probably for that reason that while constituting the Board of General Appraisers and otherwise specifically defining their duties that Congress, by section 16, expressly empowered them in the performance of those duties to take evidence.

We think not alone the plain implication but the express words of the law require in all reappraisement cases, before whatever tribunal, that the very subject of the proceeding, the goods or their statutory equivalent, that which bears the best evidence not only of the value but other statutory essentials, that which is referred to on the invoice and usually the testimony, thereby being constituted an integral part of the case presented for appraisement, must be examined and can not be ignored in any valid appraisement.

Reappraisement proceedings are purely statutory. They are rights in the nature of gratuities, and are measured by the language of the statute. The prescribed mode is the measure of the power. These propositions are fundamental. Nichols *v*. United States (7 Wall., 126), Dooley *v*. United States (182 U. S., 222), Schillinger *v*. United States (155 U. S., 166).

While the acts provided that the goods should be examined, a statutory equivalent is prescribed by section 2901. One package of every invoice, and at least one package in every ten, is the prescribed statutory equivalent, unless the collector or *any of the appraisers* deem this insufficient, in which case they may call for any or all of them. No such call having been made in this case by either of the parties mentioned, and, indeed, the importer himself having made no objection to the sufficiency of the samples before the board, the statute was complied with.

While the importer offered evidence to prove that many of the items upon the invoice in question were not represented in the public-stores cases, no proof was offered that an insufficient number of cases, as required by section 2901 of the Revised Statutes, was before the reappraisement board. It appears that a certain number of cases of each invoice were sent, but how many cases were included in that invoice nowhere appears. It has not been shown, therefore, that there was a failure to comply in any respect with section 2901 in forwarding the legally required number of cases to the board, nor does it anywhere appear that those cases and the contents were not examined by the board. The importer offered no testimony to show that the public-stores cases were not examined. On the contrary, Mr. Lunt testified positively that the board examined all of the samples that were presented by either the importer or the Government. In this particular the board states:

In the case at bar that question is not presented, as 1 package in every 10 and 1 package from every invoice was sent to the public stores, and the merchandise therefrom, or sufficient samples of it, was before the local appraiser, the general appraiser, and the board of three general appraisers.

We think that it is fairly established and that there is no evidence to the contrary in this record that the legal number of cases were

sent to the public stores for examination and were examined by the reappraisement board.

In the absence of proof to the contrary the presumption is that the board performed its duty and did examine these packages.    While, therefore, we do not agree with the reasons assigned by the board its decision must be *affirmed*.

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and BARBER, Judges, concur.