McKESSON & ROBBINS *v.* UNITED STATES (No. 2186).[1]

1. APPRAISEMENT—SAMPLES.

The appraiser, general appraiser, and the board of three general appraisers sitting as appraisers have no jurisdiction to appraise where samples are not avail-

able or accessible and examination or inspection of the goods is impossible.—Paragraph M, Section III, tariff act of 1913.    Such appraisement is void.

2. SAMPLES.

It is the duty of customs officials to take and preserve proper samples.—R. S. 2901 and 2899 and United States *v.* Seattle Brewing & Malt Co. (1 Ct. Cust. Appls. 362; T. D. 31454).

3. REAPPRAISEMENT—SAMPLES.

An appeal to reappraisement vacates the appraisement and imposes upon the general appraiser the duty of making a new appraisement and of determining de novo the value of the goods. Consequently a reappraisement of merchandise the samples of which had been released to the importer and disposed of by him was void. The importer was not bound to appeal from a void reappraisement, and upon the trial of a protest against the duties levied upon it the classification board should have ignored it. Duty should have been taken at the invoice value.

United States Court of Customs Appeals, March 17, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8527 (T. D. 39097).

[Reversed.]

*B. A. Levett* (*James W. Bevans* of counsel) for appellants.
*William W. Hoppin,* Assistant Attorney General (*John A. Kemp,* special attorney, of counsel), for the United States.

[Oral argument November 22, 1922, by Mr. Levett and Mr. Hoppin.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

This appeal attacks the validity of an appraisement and reappraisement of nine cases of merchandise imported at the port of New York. Four of the cases imported May 4, 1920, on the *Michigan* contained hair brushes, military hair brushes, Harper's hair brushes, nail brushes, bath brushes, and tooth brushes of various kinds, grades, and designs. Of this shipment, case No. 19, containing only some of the grades of hair brushes, military hair brushes, nail brushes, bath brushes, and tooth brushes, was sent to the appraiser's stores. With the exception of the grade of hair brushes marked G241S and the grade of bath brushes marked 300, none of the brushes invoiced for cases 16, 17, and 18 were found in case No. 19. Samples of the grades of nail brushes marked 8 and 191 and of the hair brushes marked 324Y invoiced for case 16 and samples of the nail brushes marked 8 and of the hair brushes marked 114W, 533Y, 114Y, 324Y, 325Y, and 325W invoiced for case 17, were, however, found in case 27, which came later on the *Mesaba* and was sent to the appraiser's stores.

Five of the cases imported on the *Mesaba* on June 19, 1920, contained hair brushes, military hair brushes, Harper's hair brushes, nail brushes, complexion brushes, bath brushes, and tooth brushes of various grades, kinds, qualities, and designs.

Of this shipment, case No. 27, containing only some of the grades of hair brushes, military hair brushes, and nail brushes, and

no complexion brushes, bath brushes, or tooth brushes whatever, was sent to the appraiser's stores. The appraiser did not examine the merchandise contained in the other four cases and had before him no representative samples of the goods therein.

In June, 1920, case 19 from the *Michigan* and case 27 from the *Mesaba* were returned to the importer after an examination of the contents thereof and the preparation of a report approving the entered value. That report was not forwarded, however, and was held awaiting the receipt of similar samples covered by another invoice. The appraiser retained samples of the nail brushes marked 6 and 8, the hair brushes marked 114(W?), 533(Y?), 991Y, G233(S?), 324Y, 145Y, 327(Y?), 975(W?), 114Y, 324W, and 325Y, and the military hair brushes marked G36S. The remaining samples were released from customs custody and went into consumption.

Because of a report received in August, 1920, from a Treasury agent, the appraiser in October, 1920, requested from the importers samples of the merchandise which had been released, but found the importers unable to comply with his request, inasmuch as the goods had already gone into consumption.

Notwithstanding the absence of the samples, the appraiser made an official return of his appraisement to the collector in which return he advanced the value not only of the merchandise which he had examined and of which he had samples, but also the value of merchandise which he never saw, never examined, and of which, so far as the record discloses, he had no information or knowledge, other than price lists and the report of the Treasury agent.

From the appraisement officially made and returned to the collector, the importers appealed to the general appraiser who had before him only the samples which had been *retained* by the examiner out of case 27; that is to say, the nail brushes marked 6 and 8, the hair brushes marked 114(W?), 533(Y?), 991Y, G233(S?), 324Y, 145Y, 327(Y?), 975(W?), 114Y, 324W, and 325Y, and the military hair brushes marked G36S.

Although it was undisputed that the appraiser did not have before him samples of all the goods and that no examination of all the goods or of samples thereof was made, the general appraiser affirmed the appraiser's appraisement of the contents of the nine cases of brushes.

The importer protested that the appraisement and the reappraisement were both void, inasmuch as they were made by the appraiser and the general appraiser without examination of the goods or of the samples thereof. The Board of General Appraisers, sitting as a classification board, overruled the protest, and the importer appealed.

For nearly seventy years prior to the passage of paragraph M, Section III, of the act of 1913 no valid appraisement of imported goods could be made without an examination or inspection of such goods

or of samples thereof.—Burgess et al. *v.* Converse (4 Fed. Cas. 726); Gibb *v.* Washington (10 Fed. Cas. 288); United States *v.* Beer (150 Fed. 566, affirming 142 Fed. 199); Ystalifera Iron Co. *v.* Redfield et al. (23 Fed. 650); Loeb *v.* United States (1 Ct. Cust. Appls. 385, 391, 392, T. D. 31479); Converse *v.* Burgess (18 How. 413, at p. 416).

The general appraiser and the Board of General Appraisers, sitting as a classification board, virtually held and the Government virtually contends that the examination and inspection of one or more grades of merchandise warrants the appraisement by the appraisers of all grades bearing the same generic name, and that if samples are not accessible on appeal the general appraiser and the Board of General Appraisers, sitting as appraising officers, are not required to examine or inspect the importation or samples thereof. We do not think that either the holding of the board or the contention of the Government is sound.

Prior to 1913, if the imported goods or samples thereof were not available for examination or inspection, reappraising officers acquired no jurisdiction to reappraise, even if there was no dispute whatever as to the nature and character of the goods, no waiver of inspection or examination, however, being made. Loeb *v.* United States, supra.

That hard and fast rule required a great deal of useless work on the part of reappraising officers and obliged them to make an examination and inspection of accessible samples notwithstanding the fact that such examination was not required by the issues involved. Paragraph M of Section III of the act of 1913 avoided the necessity of making an examination in such cases by providing that "* * * no reappraisement or re-reappraisement shall be considered invalid because of the absence of the merchandise or samples thereof before the officer or officers making the same where no party in interest had demanded the inspection of such merchandise or samples *and where the merchandise or samples were reasonably accessible for inspection.*" (Italics not quoted.) By that paragraph Congress plainly intended that where samples were accessible their examination or inspection was not required unless a demand therefor was made.

Where, however, there *is* a dispute as to the nature, kind, or character of merchandise, it is plain that the general appraiser and the Board of General Appraisers should not be compelled to rely on invoice descriptions or on less satisfactory evidence than that afforded by a personal inspection and examination of the goods. On the other hand, if on appeal there be no samples of the goods accessible, it is equally certain that the importer should not be left without hope of appellate redress and bound hand and foot by the judgment of the local appraiser. If the goods or samples are accessible and neither party demands their examination or inspection, such examination or inspection by appraising officers on appeal may well be

dispensed with, and paragraph M so provides. The appraiser, general appraiser, and the board of three general appraisers, sitting as appraisers, have no jurisdiction to appraise if samples are not available or accessible and if examination or inspection of the goods be impossible.

It is the duty of the collector to designate for examination and appraisement one package at least of every 10 packages of merchandise and a greater number should he or either of the appraisers deem more packages necessary for the representation of the whole importation. (Sec. 2901, Revised Statutes); United States *v.* Seattle Brewing & Malt Co. (1 Ct. Cust. Appls. 362, 368; T. D. 31454).

Moreover, section 2899, Revised Statutes, makes it the imperative duty of officers of customs not to release from customs custody merchandise "liable" to be inspected or appraised until the same has been inspected or appraised or *until the packages sent to be inspected or appraised are found correctly and fairly invoiced and put up and so reported to the collector.* That section also provides that the collector may release goods from customs custody upon the bond of the owner conditioned that such goods shall be delivered to the order of the collector at any time within *ten days after the package sent to the public stores has been appraised and reported to the collector.* (See sec. 2939, R. S.) That provision, however, does not give to appraising officers jurisdiction to appraise without samples and in case goods are not returned on order of the collector the Government is remanded for relief to its suit on the bond.

The appraiser had jurisdiction to make appraisement of the merchandise contained in package 27 and of all like merchandise contained in packages 26, 28, 29, and 30. He also had jurisdiction to make appraisement of all goods found in packages 16, 17, and 18 which were like those found in case number 19, or like those found in case number 27, and his appraisement of such goods would have been conclusive if there had been no appeal. His appraisement, however, was vacated by the importer's appeal to reappraisement, which appeal imposed on the general appraiser the duty of making a new appraisement and of determining de novo the value of the goods.

Unfortunately the appraiser in June, 1920, nearly 4 months prior to the official return of his appraisement made in October, 1920, released to the importer all samples found in cases 19 and 27, with the exception of about 14, and the samples so released having gone into consumption were no longer available for examination or inspection by the general appraiser when by virtue of the appeal he was called upon on December 29, 1920, to reappraise the merchandise. Consequently, the general appraiser had no jurisdiction to appraise any of the goods other than the samples actually submitted to him and the merchandise of which such samples were representative.

The appraisement of the appraiser having been vacated by the appeal and the general appraiser's appraisement being void as to all samples not available for his examination and consequently as to all goods not represented by such samples, it follows that duty should have been taken at the invoice value on all goods, samples of which were not submitted to the general appraiser, and that to that extent the protest of the importer should have been sustained.

The importer was not bound to appeal to reappraisement from a void appraisement or to re-reappraisement from a void reappraisement. The appraisement and reappraisement of goods not represented by samples accessible for examination or inspection are not voidable but absolutely void decisions and like a void judgment may be attacked collaterally. If samples of all the goods had been examined or inspected by the general appraiser, he would have had jurisdiction by virtue of the appeal to reappraise the importation, but having before him samples of some of the goods only his reappraisement was valid only as to such samples and the articles of which they were representative. The importer having protested against the duties because they were levied on a void reappraisement, the Board of General Appraisers, sitting as a classification board having the power to determine the rate and amount of duty, should have ignored the reappraisement in so far as it was void and declared invalid the liquidation of the collector based on that part of the reappraisement which was without legal force or effect.

The decision of the Board of General Appraisers is reversed and the case remanded to the Board of General Appraisers for proceedings in conformity with this opinion. *Reversed.*