UNITED STATES v. MICHELSON & Co. (No. 2369).[1]

1. CONSTRUCTION, PARAGRAPH M, SECTION III, TARIFF ACT OF 1913—AIDED BY CONTEXT—APPRAISEMENT—SAMPLES.

That part of paragraph M, Section III, tariff act of 1913, which provides that at the hearings before the single general appraiser and the board of three, in appraisement appeals, the parties shall be given an opportunity to "inspect all samples," is in harmony with the theory that such appeals may not be determined if samples are not to be had.

[1] T. D. 40584.

2. Construction, Paragraph M, Section III, Tariff Act of 1913—Appraisement—Samples.

The appraiser, the general appraiser, and the board of three general appraisers sitting as appraisers have no jurisdiction to appraise if samples are not available or accessible and if examination or inspection of the goods is impossible.— Paragraph M, Section III, tariff act of 1913; McKesson & Robbins *v.* United States (11 Ct. Cust. Appls. 459; T. D. 39534). No change is wrought in the law by the fact that the merchandise is perishable—in this case raw tomatoes.

## United States Court of Customs Appeals, December 17, 1924

Appeal from Board of United States General Appraisers, G. A. 8734 (T. D. 39990)

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*John G. Lerch* and *Edward J. Neary,* special attorneys, of counsel), for the United States.
*Gerry & Wakefield* for appellees.

[Oral argument Oct. 17, 1924]

Before Graham, Presiding Judge, and Smith, Barber, Bland, and Hatfield, Associate Judges

Barber, Judge, delivered the opinion of the court:

This case involves numerous importations of tomatoes in the raw state at Miami, Fla., under the tariff act of 1913.

Whether or not the tomatoes were appraised by a local appraiser (the importers assert they were not) is a question the determination of which probably depends upon the authority of the officer assuming to make such appraisal so to do, but this question we do not consider for reasons hereinafter appearing.

The person acting as local appraiser seems to have approved the entered value, and assuming such appraisement to have been properly made, the collector appealed to reappraisement by a single general appraiser.

The latter increased the invoiced and entered value and from his decision an appeal to re-reappraisement was taken by importers.

The two preceding appraisements had been made on the basis of foreign market value. The board of three sitting in appraisement were of opinion that the merchandise should not be appraised upon that basis because it concluded there was no foreign market value and, therefore, appraised the tomatoes under paragraph L, Section III, of the act of 1913, specifically under the part thereof providing in substance that the actual market value or wholesale price as defined by law of any imported merchandise, etc., shall not in any case be appraised at less than the wholesale price at which such merchandise is sold or freely offered for sale in the usual wholesale quantities in the United States, in the open market, etc. This resulted in a material advance in value from that found by the single general appraiser.

The collector liquidated the entries upon the value thus ascertained. The importers protested and the classification board sustained the protest.

It is both established and conceded that at the hearing before the single general appraiser, as well as before the reappraisement board, neither the merchandise itself nor samples thereof were before or examined or inspected by such tribunals or were accessible therefor.

The classification board, in a well-reasoned opinion, carefully considered and decided the single question of whether either the general appraiser or the board of three sitting in appraisement had jurisdiction to determine the question of value in the absence of the merchandise or samples thereof, and expressly limited its decision to the determination of that question.

Upon the authority of McKesson & Robbins v. United States (11 Ct. Cust. Appls. 459; T. D. 39534) and other cases cited it held that such appraising tribunals were without jurisdiction to appraise and, therefore, could not make a valid appraisement in the absence of the merchandise or samples thereof.

The board found, and it is conceded, that at the hearing before the single general appraiser the importers by counsel seasonably objected to the right of the appraiser to proceed with the hearing and appraise the merchandise, and moved to dismiss what they termed the collector's appeal, for the reason that there were no samples of the merchandise accessible before the single general appraiser, which motion that officer overruled.

The case is argued in this court upon the assumption that the merchandise or samples thereof could not be produced before either the single general appraiser or the board of three, and that any notice to produce the same or demand therefor by either party would have been useless. In other words, it is not claimed that the absence of such notice or demand affects the issue.

The reason the board refrained from considering the objection to the authority of the person acting as local appraiser to so act, which was raised by importers' protest, was because the conclusion it reached on the only issue decided made such consideration unnecessary, and for the same reason we likewise refrain therefrom. However, notwithstanding the fact that the decision of the board was limited, as stated, the Government extensively discusses the question of whether there was a valid appraisement by an authorized local appraiser, and the importers follow suit, evidently desiring to present their views on that question, so that if we reverse the judgment of the board the cause may be remanded for further finding on that particular question.

It may be doubted if the Government's assignments of error raise the question. They can only be so interpreted by assigning a specific meaning to very general assignments.

The issue here is to be determined by the interpretation of part of paragraph M, Section III of the tariff act of 1913. The particular portion relied upon by the Government is as follows:

And no reappraisement or re-reappraisement shall be considered invalid because of the absence of the merchandise or samples thereof before the officer or officers making the same, where no party in interest had demanded the inspection of such merchandise or samples, and where the merchandise or samples were reasonably accessible for inspection.

In this connection, an earlier provision in the same paragraph should be considered, which is, in effect, that at the hearing before the single general appraiser and the board of three the parties shall be notified thereof, given an opportunity to introduce evidence and cross-examine witnesses, and to "inspect all samples" and documentary or other evidence. Surely this provision contemplates the presence of samples.

In Loeb *v.* United States (1 Ct. Cust. Appls. 385; T. D. 31479), which related to an appraisement made in the year 1899, this court by De Vries, Judge, exhaustively considered the question of whether, under the customs administrative act of 1890, the failure of the board of three general appraisers in reappraisement proceedings to examine samples designated by the collector for examination rendered the decision of that board void for want of jurisdiction.

Upon reason and authority, as we then thought and still think, it was held that the failure of such board to examine imported merchandise or samples thereof, rendered an attempted appraisement so made by it invalid under the tariff act of 1909, and in the opinion it was pointed out that a like result would follow from such a procedure on the part of a single general appraiser.

Again, in United States *v.* Scanlan (5 Ct. Cust. Appls. 290; T. D. 34473) the same conclusion was reached under the tariff act of 1909.

The applicable statutes in all essential particulars were the same when those cases were decided as now, with the exception of that part of paragraph M, Section III, above referred to.

In McKesson & Robbins *v.* United States (11 Ct. Cust. Appls. 459; T. D. 39534) we reviewed the same question in the light of said paragraph M, and pointed out that thereby the necessity of always making an examination of the merchandise was avoided by the provision that if no party in interest had demanded an inspection of such merchandise or samples where the same were reasonably accessible for inspection, a valid appraisement might be made in their absence. But it was clearly held that "the appraiser, general appraiser, and the board of three general appraisers, sitting as

appraisers, have no jurisdiction to appraise if samples are not available or accessible and if an examination or inspection of the goods be impossible."

No persuasive new argument has been presented in the case at bar that leads us to any different conclusion from that expressed in the opinion in that case.

It was suggested therein that for more than 70 years prior to the enactment of paragraph M no valid appraisement of imported merchandise could be had without an examination or inspection of the samples thereof, in support of which statement numerous cases were cited.

To what was said in our opinion in that case it may be added as confirmatory of the conclusion there reached, that beginning with the customs administrative regulations, at least as far back as 1884 (we have not undertaken to examine earlier ones, if any), and in those of 1892, 1899, 1908, and 1915 the executive department having charge of the collection of customs duties has construed various tariff acts then respectively in force as requiring an actual examination and inspection of the merchandise, or the lawfully prescribed samples thereof by the appraising tribunal.

The Government asserts that our decisions in the Scanlan and McKesson cases are not in harmony, because in the former we held that the collector should liquidate on the basis of the appraisement of the local appraiser, while in the latter it was held that the invoice value must control the liquidation.

A little examination of the opinions in those two cases, however, will disclose that in the Scanlan case the appraisement of the local appraiser was based upon an inspection of the importation, while in the McKesson case the local appraiser never saw or examined the merchandise or samples thereof, the appraisement of which was challenged. Upon this state of facts in that case the invoiced or entered value was the only value upon which liquidation could be founded, while in the Scanlan case a valid appraisement had obviously been made by the local appraiser.

The Scanlan case, moreover, shows that the Treasury Department then held that a legal reappraisement could not be made in the absence of the merchandise or samples thereof, and in the opinion it was pointed out that, although in exceptional cases this might result in depriving the Government or the importer of the remedy of reappraisement, that, nevertheless, such policy had been adopted rather than the opposite one, "whereby either party might be exposed to the uncertainties attending a reappraisement upon expert testimony in the entire absence of the merchandise or samples thereof."

As to the Government's argument that when perishable merchandise is imported it is "ridiculous" to say that samples must be pre-

served in order to enable a reappraisement tribunal to make a legal appraisal thereof, it may be observed that such requirement is now no more ridiculous than it always has been. That condition, if ridiculous, does not seem to have moved the executive department charged with the enforcement of customs laws to attempt to change the long-existing practice or Congress to modify it in any respect prior to the act of 1913.

We do not think that, by the enactment of Section III, paragraph M, of the act of 1913, Congress intended any such modification as now claimed by the Government. The meaning and effect of that paragraph was settled, so far as we are concerned, in the McKesson case. If we are wrong it will be easy for Congress to say that a legal appraisement of merchandise may be made without any examination of the property to be appraised, either by the appraising body or anyone else, if it has that power.

The cases above mentioned and those cited in the opinions therein may be referred to for a full expression of our views on this subject and for a collation of authorities deemed to support the same.

We are of opinion that the Board of General Appraisers reached the right conclusion on the issue decided by it, and its judgment is *affirmed.*