UNITED STATES *v.* AMERICAN EXPRESS CO. (No. 1334).[1]

1. "RATE AND AMOUNT OF DUTIES."

The words "rate and amount of duties" occurring in the statute define a class of decisions against which protest will lie for any cause distinctly and specifically stated and are not a limitation of the grounds upon which a collector's decision can be assailed.

2. BOARD'S JURISDICTION TO ORDER REAPPRAISEMENT.

The board has jurisdiction to hear and determine protests against a collector's decision assessing a rate and amount of duty upon imported merchandise on the ground that the appraisement is irregular or invalid, and a demand for a reappraisement operates after the manner of supersedeas.

3. PAROL TESTIMONY.

The parol testimony here does not contradict but merely supplies an omission, and the rule against its admission, in the absence of any statutory or regulative requirement of a record, will not be enforced.

United States Court of Customs Appeals, June 1, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7512 (T. D. 33962.)

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, of counsel), for the United States.

Submitted on record by appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal relates to an importation made at the port of New York. Due appraisement of the merchandise was had and the col-

lector proceeded to decide the proper rate and amount of duties and liquidated the entry accordingly. The protestant thereupon in due time filed a protest alleging that he had duly filed an appeal to reappraisement before a single general appraiser, which was undecided, and that therefore the decision of the collector was void, having been had during the pendency of said claimed appeal. At the hearing before the board, parol testimony was admitted to prove that the appeal to reappraisement was filed. It was so testified by the protest clerk of the importer. The protest clerk of the collector testified he had no recollection of such and produced his records, which showed that no entry of such appeal had been recorded. The board found as a fact that the appeal to reappraisement had been filed, sustained the protest, and ordered: "And the collector is directed to transmit all the papers to the Board of General Appraisers for reappraisement." The Government appeals, specifying as error, first, that the board had no jurisdiction of the protest; and, secondly, that parol evidence was not admissible to establish the filing of such a reappraisement appeal; and, thirdly, that the board was without power to make the order directing the collector to forward the papers for reappraisement. Accuracy will be subserved by quoting from the Government brief, wherein, referring to the said order of the board and its jurisdiction in the premises, it is stated:

The United States claims that in making such an order the board entirely exceeded its jurisdiction, and that the issue as actually made in the case at the trial has not raised any question as to the "*rate and amount of duties* chargeable upon imported merchandise," nor any question of "fees, charges, or exactions other than duties" (subsec. 14, sec. 28, act of 1909). On the contrary, the order of the board is, in effect, a mandamus to the collector requiring him to perform the ministerial duty of transmitting papers to the board of appraisers, and to order the board to appraise the goods. The law does not vest the board with authority to make any such order.

The protest recites:

We hereby protest against the liquidation and *assessment of duty* as made by you. * * *.

We claim that the entered value is correct and that the liquidation of the entry was illegal and contrary to law, as we were deprived of our rights to a reappraisement as provided for in subsection 13 of section 28 of the tariff act of August 5, 1909.

With the entry and invoice having duly noted thereupon the appraisement and liquidated rate and amount of duties before him, there can be no question that this protest with mathematical certainty made known to the collector that protestant objected to his decision in assessing duties upon a greater value than the entered value, to wit, the appraised value, exact figures of which were before him, and that the precise ground of that objection was that his decision so determining the amount of duty assessed and assessing a greater amount of duties than that entered was void in that he had prematurely rendered the same while an appeal to reappraisement was pending.

Aside from the fact that this particular protest did precisely "raise the question as to the amount of duties chargeable upon the imported merchandise," we think that the challenge of the Government made, *supra*, to the jurisdiction of the board as to this protest overlooks the real nature of the jurisdiction vested in the board by the statute. The statute in this particular reads:

SEC. 12. * * * All notices in writing to collectors of dissatisfaction of any decision thereof, as to the rate or amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), with the invoice and all papers and exhibits, shall be forwarded to the board of nine general appraisers of merchandise at New York, to be by rule thereof assigned for hearing or determination, or both. * * *

SEC. 14. That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, * * * if dissatisfied with such decision, give notice in writing to the collector, setting forth therein distinctly and specifically * * *.

The statutory expression "as to the rate and amount of duties" is not prescribed as an essential ground of protest, as the Government statement implies. The statute does not enumerate or even attempt to limit the grounds or reasons of protest. It simply requires that they be set forth "distinctly and specifically." The words "as to the rate and amount of duties" are introduced to identify and specify one of the *classes of decisions* against which such protests may be made, heard, and determined by the board. It effects that *every* decision of a collector which fixes a rate or an *amount* of duty is by due protest the subject of review by the board. It is not required by the statute that the rate or the amount of duty determined be *per se* erroneous, but if it is one of that class of decisions that determine either a rate or an amount of duty it is by this statutory phrase one of the enumerated classes of decisions the subject of review by the board, albeit the ground of protest is that the collector rendered it prematurely or otherwise without jurisdiction regardless of the rate or calculated amount of duty. For example, it may have been that there was no appraisement, or that the collector was not a duly qualified officer, or for other cause affecting the validity of a decision as to the rate and amount of duty upon imported merchandise, though the protest might not assail the accuracy of either the rate or the calculated amount of duty assessed. The words are used by Congress to *define a class of decisions* against which protest will lie for any cause "distinctly and specifically" stated and are not introduced into the statute as a limitation of the grounds upon which a decision of a collector can be assailed. And, in this respect, they are not an exclusive definition of appealable decisions of collectors, which fact

alone demonstrates that they are not a statement of the sole grounds of protest against a decision of a collector of customs. Other classes of decisions of collectors are enumerated by the statute from which appeal by protest lies to the Board of General Appraisers. The Supreme Court has stated these in *In re* Fassett (142 U. S., 479–487), as follows:

> The decisions of the collector from which appeals are provided for by section 14 are only decisions as to "the rate and amount" of duties charged upon imported merchandise, and decisions as to dutiable *costs and charges*, and decisions as to *fees and exactions* of whatever character. Nor can the court of review pass upon any question which the collector had not original authority to determine.

And, we may add, this very obvious view is supported by the fact that there are other classes of decisions of collectors from which no appeal is allowed to the board not only by reason of not being of those thus enumerated, but by reason of being expressly excepted by this very statute, to wit, decisions of collectors as to "duties on tonnage." So it follows that this being a decision of a collector of customs assessing a rate and an amount of duty, even though neither the accuracy of the rate nor amount of duties *per se* were challenged, that decision being one of that statutory class, is the subject of protest and consideration by the board for any cause distinctly and specifically stated.

Jurisdiction in the board of this class of protests is supported in principle by that class of well-settled and long-established decisions by the Supreme Court declaring jurisdiction in the board to hear and determine protests against a decision of the collector assessing a rate and amount of duty upon imported merchandise upon the ground of an irregular or invalid appraisement. Oberteuffer *v.* Robertson (116 U. S., 499); Robertson *v.* Frank (132 U. S., 17); Tilge *v.* United States (2 Ct. Cust. Appls., 149; T. D. 31676); Stein *v.* United States (1 Ct. Cust. Appls., 36; T. D. 31007; Stein *v.* United States (1 Ct. Cust. Appls., 478; T. D. 31525).

Moreover, this protest not only challenges the increment of duty measured by the liquidated over the entered amount, but alleges the decision of the collector illegal as to the whole reappraisement while appeal thereto was pending. While this exact point seems not to have been heretofore decided by the courts, we think, as was well stated by Judge Somerville in G. A. 5058 (T. D. 23453), speaking for the board on the precise point, that—

> The conclusion is irresistible that the evident intention of Congress was that the various demands for reappraisement, expressly allowed by that statute, were intended to operate after the manner of supersedeas or stay of proceedings.

Indeed equally to the point, may it be said, is the fundamental rule of such statutory proceedings that the mode is the measure of the power and that without compliance, or where permissible due

waiver having been had, with the antecedent requirements the decision of the collector is at least illegal if not void. (See Tilge *v.* United States, *supra.*)

Indeed, article 1068 of the Customs Regulations of 1908 seems to express this legal status exactly.

ART. 1068. *Liquidation pending reappraisement—Additional duty.*—Liquidations are void when made pending an appeal to reappraisement. In such cases liquidation should be suspended until the conclusion of reappraisement proceedings, when the liquidation should accord with the value returned by the general appraisers.

The protest, therefore, went to the point also that this decision of the collector assessing this amount of duty was illegal, were that requirement necessary.

This brings us to the second assignment of error. It is urged by the Government that it was not competent that proof be made of the filing of a reappraisement by parol. The contention is further claimed to be supported by the general principle that a public record can not be varied by parol testimony.

Preliminarily it may be well to define the exact status of these so-called records of protest or appeal clerks of collectors of customs. The statute nowhere requires such. The regulations, however, made under the general law (section 252 of the Revised Statutes), authorizes that "the Secretary of the Treasury * * * shall from time to time establish such regulations * * * to secure a just, faithful, and impartial appraisal of all goods, wares, and merchandise imported into the United States * * *." Pertinent to these considerations the Secretary of the Treasury, acting under this general power, duly promulgated article 1075 of the Customs Regulations of 1908, in force at the time of this importation, providing:

ART. 1075. *Receptacles for protests—Records.*—A receptacle shall be provided at every customhouse. for notices of protest, and the date of its reception must be stamped or written upon each; also the date of entry of the merchandise, and of the liquidation, the name of the importing vessel, and serial number of the protest indorsed thereon. A permanent record shall be kept by collectors of customs, or officers acting as such, and by naval officers of all protests at their respective ports, with particulars of the successive steps taken in each case.

This article, however, was related solely to protests filed in classification cases under section 14 of the customs administrative act of 1890 and its succeeding paragraphs. Reappraisement protests, less formal matters, were provided for in article 896 of the same regulations.

ART. 896. * * * Collectors shall hereafter, for better reference, give to each appeal a serial number, in like manner as in protests, treating appeals for reappraisement by a single general appraiser and subsequent appeals for board reappraisement as one appeal under the same serial number, and shall insert such record serial number in the letter transmitting the appeal to and for the use of the board. These serial numbers shall begin upon the receipt of these regulations. * * *

The different requirements may well be contrasted. There is no record requirement of reappraisement protests to be retained by the collector. The sole requirement is to give each a serial number and "insert such record serial number in the letter transmitting the appeal to and for the use of the board." The only record requirement of such appeals seems to be, if of anything, that of serial numbers kept, not with the protest clerk, but, so far as inference shows, with the collector's correspondence. We speak now of course only of what the law and regulations *require*. Any further solemnity of proceedings in these particulars is not *legally required* records.

We are to bear in mind here that first there is no statute or regulation directing the protest clerk to keep record of reappraisement protests, and that the testimony offered did not go to the point of contradicting either a public or gratuitous record, but of supplementing entries or supplying omissions in a nonstatutory record. The rule as to supplying omissions seems in this particular to be well stated and amply fortified by decisions in 17 Cyclopedia of Law and Procedure (pp. 587–588) as follows:

(VI) *Supplying omissions.*—Where certain matters are by law required to be made to appear of record or in an official document, an omission as to such matters can not be supplied by parol or extrinsic evidence; nor can the records of official proceedings be supplemented by parol so as to show a compliance with statutory requirements; nor can public officers put into their report by parol evidence matters as to which they were not authorized by law to act; and in no case can an omission which renders the record or document null and void be supplied by parol. But an omission may be explained by parol; and parol evidence may be admissible to show matters which, while they might properly appear on the record or document, are not required to be therein set forth; or matters as to which a record is usually kept, although not required by statute. It has also been asserted that, in the absence of any statute making the record of a public officer or board the sole evidence of his or their proceedings, parol evidence is admissible to show that certain acts were done or proceedings had, although as to them the record is silent, where the rights of innocent persons might otherwise be prejudiced.

c. *Quasi-public records.*—Parol evidence is admissible to explain or contradict records which, while kept pursuant to a public duty or even required by statute, have not the dignity which pertains to the more solemn official records, such as a ship's log book, entries made by physicians in the ward books of an asylum, or the records of a religious society.

It would seem that as the strict rule against such parol testimony will not be enforced where the rights of third parties will be injured we should not, in accordance with the above principles, apply it here in the absence of any statutory or regulative requirement of a record, and where the testimony does not contradict but merely supplies an omission to such a record. That such has been permitted in tax proceedings such as are these, see Taymouth *v.* Koehler (35 Mich., 21).

The last point urged by the Government is against that part of the decision of the board in the nature of a mandate to the col-

lector to send up to the board the reappraisement record for the purpose of reappraisement.

We regard, however, this language of the board a mere definition of the duties of the collector, as viewed by the board, rather than a mandatory direction addressed the collector.

*Affirmed.*