UNITED STATES *v.* KUYPER & Co. (No. 2809)—KUYPER & Co. *v.* UNITED STATES (No. 2816)[1]

[1] T. D. 42129.

United States Court of Customs Appeals, April 4, 1927

*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.
*Allan R. Brown, contra.*

[Oral argument January 26, 1927, by Mr. Igstaedter and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

On October 24, 1921, P. C. Kuyper & Co. imported at the port of New York a number of knitting machines in a knocked-down and crated condition. These machines, when assembled and fully set up, weigh about 8 tons, and are approximately 40 feet in length, each. The photographs introduced in evidence show them to be very bulky and complicated machines consisting of many parts, chiefly metal. The invoice gives the values of the several machines in German *marks*, which values are said by the importer to be the home market values of the same when imported, and with advances to make dutiable values, they were entered at those valuations. Neither the local appraiser nor any of the assistant appraisers ever saw the machines. The machines were not sent to the appraiser's store for examination, but were sent direct from the dock to the purchasers at Paducah, Ky., Fort Wayne, Ind., Lawrence, Mass., Boonton, N. J., and Reading, Pa., where they were thereafter assembled and set up for operation, and where they still remain, so far as this record shows, in the same condition as when imported, with the exception of their assembling.

When the goods were entered a bond with approved sureties was given by the importer to the collector. The original bond is shown to be at present missing from the file of the collector and the record does not disclose the penal amount thereof, but the preamble and condition of the bond were as follows:

Whereas the said principal expects to enter certain imported articles at the port of ——— within a period of one year from ——— to and including ——— and desires delivery of all or part of the articles prior to ascertainment by customs officers of the quantity and value thereof, and of the full amount of duties

and charges due thereon and prior to the decision by the proper officer as to right of said articles to admission into the United States:

Now, therefore, the condition of this obligation is such, that—

If the said obligors shall produce to the collector of customs all the documents, and shall perform all acts, and comply with all the conditions required by Part 3 of Title IV of the tariff act of 1922, and shall comply with the requirements of all other laws and regulations made in pursuance thereof relating to the importation and admission of said articles into the commerce of the United States, then this obligation shall be void; otherwise it shall remain in full force and effect to the extent and in such amounts as liquidated damages as may be demanded by the collector in accordance with law and regulations not exceeding the penal sum of this obligation for any breach or breeches [breaches] thereof.

On April 23, 1923, an examiner at the port of New York, E. H. Weldon, who had made a preliminary examination of the crated, unassembled machines at the dock, under the direction of the appraiser, went to the various places where these machines were located, viewed them, and reported his estimate of values to the assistant appraiser and appraiser. The goods were then appraised by the local appraiser, who found that they should be appraised on a dollar basis. Having applied this rule, he advanced the dutiable values about $4,200 on each machine, and returned that value. Thereupon the collector fixed duty accordingly and also imposed additional duty for undervaluation under paragraph I, Section III, of the tariff act of October 3, 1913.

The importer then appealed for reappraisement by a single general appraiser. On the matter coming on to be heard, the Government moved to dismiss the appeal on the ground that no samples were present. The importer then formally requested the single general appraiser to go and view the machines in question at their then location, which request was refused. The importer thereupon offered to prove by witnesses and photographs the condition and value of the machines and that the entered value was the correct home market value of the goods when imported. These various offers were refused and the appeal was dismissed without any appraisement of values.

Thereupon the importer again appealed to re-reappraisement by the board. On this hearing the particular shipment to Fort Wayne, Ind., was selected as a test case. The importer again offered to prove that the home market value was as entered. The Government then moved to dismiss the appeal for the reason that the single general appraiser had made no valuation and hence no appeal to the board would lie. Thereupon the importer requested the board to view the particular machine selected at Fort Wayne, at the same time offering to pay the expenses of such examination. The board ruled, however, that the single general appraiser having made no appraisement, an appeal did not lie to the board because, under paragraph M of Section III of the tariff act of October 3, 1913, such

appeal will lie only when the importer "shall deem the reappraisement of the merchandise too high." The appeal was then dismissed without any appraisement of value.

The collector liquidated the entry on May 19, 1925, on the basis of the appraisement made by the local appraiser, and the importer protested, which protest was duly certified to the board. On the hearing, the classification board, after a rehearing, ordered the liquidation canceled and held that the re-reappraisement board had properly held that it had no jurisdiction, that the single general appraiser had jurisdiction, and that the appeal from the valuation made by the local appraiser was then and is now pending before the single general appraiser.

From that judgment there are cross appeals to this court. The Government, on its part, contends here that neither the single general appraiser nor the re-reappraisement board had jurisdiction because of the absence of samples; that the inspection of the machine by the examiner was sufficient, and that, therefore, the decision of the local appraiser was valid and should stand, together with the liquidation. The importer, on its part, contends that the appeal to the single general appraiser vacated the appraisement of the local appraiser, and, there having been no subsequent appraisement, the entered value must be taken as the dutiable value and the liquidation should be canceled.

We shall first direct our attention to the purported appraisement by the local appraiser. The record shows that the machines in question were examined by an examiner about 18 months after their importation, that this examination was reported to the appraiser and was made the basis of that officer's appraisement. Assuming, without deciding, the necessity of an inspection of these machines by the local appraiser before appraisement, the question then arises whether this inspection by an examiner was sufficient to comply with the statute, paragraph M, Section III, of the tariff act of October 3, 1913, hereinafter quoted, and to constitute a valid appraisement. We think it was. *MacMillan Co.* v. *United States,* 11 Ct. Cust. Appls. 466, involved the right of an importer to amend his entry as prescribed by paragraph I, Section III, of said act of 1913, which provided such amendment might be made, but not after either the invoice or the merchandise had come under the observation of the appraiser. The court held that the right to amend did not cease when the invoice or merchandise came to the observation of the examiner, but only when the examiner had finished his work and had reported to the appraiser, saying:

When the invoice and the official reports of his subordinates as to the nature and value of the merchandise come to the appraiser for his consideration, then for the first time does he see the invoice and merchandise through the eyes of

the examiner or through those of the assistant appraiser, and then for the first time may it be truly said that the invoice and merchandise have come either actually or constructively under the observation of the appraiser. The observation and judgment of the examiner and assistant appraiser do not, however, become the observation and judgment of the appraiser until he approves their reports. Arts. 1120 and 1123, Customs Regulations of 1915.

Examiners were originally provided for by the act of July 27, 1866, R. S. 2538, as follows:

SEC. 2538. The Secretary of the Treasury may, on the nomination of the appraiser, appoint such number of examiners at the port of New York as the Secretary may in writing determine to be necessary, to aid each of the assistant appraisers in the examination, inspection, and appraisement of merchandise.

The duties of such examiners at the time of this importation were fixed by article 1124 of the Customs Regulations of 1915, which is, in part, as follows:

ART. 1124. *Examiners.*—It is the duty of examiners, under the supervision and direction of the appraiser and assistant appraisers, to examine imported merchandise designated by the collector for examination, to check the same with the invoices therefor, and to ascertain and report the foreign market value thereof as defined by law, and in their return to so describe the merchandise that the rate of duty chargeable thereon may be determined by the collector.

We are of opinion, following the rule announced in *MacMillan Co.* v. *United States, supra,* and the statute and regulation above quoted, that the local appraiser must be considered as having inspected the goods imported here, and no other objection being urged to his appraisement except as to the dutiable value of the goods found, his appraisement must be held to have been valid at the time it was made and to so remain, unless vacated or set aside by subsequent proceedings.

The next inquiry respects the proceedings on appeal to reappraisement before the single general appraiser.

When the appeal to reappraisement was perfected it came on for hearing before the single general appraiser at New York. At that time certain of the imported machines in question here were located at Boonton, N. J., Lawrence, Mass., and at various other places not far removed from the place of hearing. At that time the issues had not been restricted, as was later done, to the particular machine at Fort Wayne, Ind. On motion of the Government for dismissal because of the absence of samples, the importer requested the single general appraiser to proceed to the places where the machines were located and view them, which he refused to do, holding they were not reasonably accessible to him.

We had under consideration in *McKesson & Robbins* v. *United States,* 11 Ct. Cust. Appls. 459, the necessity of the presence of samples of the merchandise when appraisement thereof was being

made. In the opinion in the case cited, Smith, J., traces the development of the practice of requiring such samples and the reasons therefor. Particular attention is called to the relaxation in the rule occasioned by the enactment of paragraph M, Section III, of the tariff act of October 3, 1913, and the following portion thereof:

* * *; and no reappraisement or re-reappraisement shall be considered invalid because of the absence of the merchandise or samples thereof before the officer or officers making the same, where no party in interest had demanded the inspection of such merchandise or samples, and where the merchandise or samples were reasonably accessible for inspection.

The holding in the case cited is summed up in the following language taken from the opinion filed (pp. 462, 463):

If the goods or samples are accessible and neither party demands their examination or inspection, such examination or inspection by appraising officers on appeal may well be dispensed with, and paragraph M so provides. The appraiser, general appraiser, and the board of three general appraisers, sitting as appraisers, have no jurisdiction to appraise if samples are not available or accessible and if examination or inspection of the goods be impossible.

We adhered to that ruling in *United States* v. *Michelson & Co.*, 12 Ct. Cust. Appls. 402, although that case involved perishable vegetables. In *United States* v. *Rolls-Royce Co.*, 13 Ct. Cust. Appls. 259, we reiterated the doctrine. These cases, although they announced a doctrine which sometimes produced unfortunate results, were nevertheless firmly based upon not only the letter but the apparent intent of the acts of Congress upon that subject.

It follows, therefore, that when the single general appraiser held that samples must be either present at the time of hearing or be reasonably accessible, he followed the law as we have announced it. That no samples were present is conceded. But was the single general appraiser correct in holding they were not reasonably accessible? We can not agree with him in this respect.

What constitutes reasonable accessibility must, necessarily, vary according to the surrounding circumstances. We held in *United States* v. *Rolls-Royce Co., supra,* that automobile chassis which had gone into consumption generally could not be held to be *reasonably* accessible. But that situation is much different from the one before us here. In the case at bar the machines were released to the importer without examination, except enough to thereafter identify them, and with knowledge by the Government officials that they were to be shipped to certain designated points and be there assembled and set up, after which they could more readily be examined and appraised. This arrangement was not one made for the benefit of the importer alone, but for the mutual benefit of the importer and the Government. At the time of this importation articles 565

and 566 of the Customs Regulations of 1915 were in full force and effect. They provided: ·

ART. 565. *Examination of machinery.*—Machinery may, upon application by the importer or owner, be examined and appraised at the mill or factory after being set up, upon compliance with the following conditions:

The importer or owner shall file with the collector a bond, on Customs Form 3401, in double the amount of the estimated duties, if the collector shall require the same, and deposit an amount sufficient to pay any additional expenses of such examination, and shall stipulate that he will not contest the validity of such appraisement.

The appraiser shall make such preliminary examination as may be necessary to identify the merchandise with the invoice.

ART. 566. *Delivery—Appraisement and cancellation of bond.*—After the bond has been filed and the preliminary examination made by the appraiser, the collector may release the packages to the importer.

Within 90 days after the issue of the delivery permit the importer must notify the collector or appraiser that the machinery has been set up and is ready for examination, whereupon the appraiser shall proceed with the final examination and appraisement.

In this way the Government itself· had provided for just such emergencies and, having provided a method of procedure, it hardly seems that it should thereafter be permitted to say that such method of procedure could not legally be used. Certainly it must be conceded that the local appraiser might have inspected these machines at their various locations. If he might have done so, no reason appears why the single general appraiser or the Board of General Appraisers on re-reappraisement might not also have done so. A rule which would insure the examination and inspection of these machines by one appraising officer and not insure the same right and privilege in each successive step in such appraisement thereafter would be an unreasonable rule. The functions of the single general appraiser and Board of General Appraisers, under said act of 1913, were those of appraising officers, their proceedings were *de novo*, and when their jurisdictions were respectively invoked, it was to do what it is assumed the preceding official should have done. *McKesson & Robbins* v. *United States, supra.*

We said in *United States* v. *Rolls-Royce, supra:*

This court pointed out in *McKesson & Robbins, supra,* that by sections 2901 and 2899, Revised Statutes, ample machinery was provided by which there were until final appraisement, within the control of the customs officers, samples of the imported merchandise. It was to such samples we believe the "reasonably accessible" provision of paragraph M referred, and not to merchandise which had left customs custody and was in the commerce of the country.

The expression of this court, so used, should be amplified to this extent, that where some method has been provided by statute whereby the goods or samples thereof may not be retained at the appraiser's store but may be permitted, under reasonable and valid customs regulations, to be preserved elsewhere for appraisement but

in customs custody, then such goods shall, likewise, be deemed to be "reasonably accessible."

It is argued, however, by counsel for the Government that neither the single general appraiser nor the Board of General Appraisers had power or authority to go to Fort Wayne, Ind., and inspect the machine there, because no hearing had been fixed there by the president of the board under Rule VII of the board, and because no such hearing was asked for by the importer. The importer had a right to rely upon the arrangement he had made with the Government when his goods were shipped to their destination under bond in pursuance of the customs regulations. If it be conceded that hearings may only be had as fixed by the president of the board, it does not appear that any hearing at the places where these machines were located was necessary. All that was required was an examination of the machine; this was not a hearing any more than it may be said to be a hearing when a jury in a condemnation proceedings views the premises to be condemned.

We therefore hold that the single general appraiser erred in holding he had no jurisdiction of the said reappraisement because of the absence of samples. They were, in law, reasonably accessible and he should have proceeded to a hearing on the merits.

The question then arises as to the proceedings on appeal, before the re-reappraisement board. It will be conceded that the importer was insisting before both the single general appraiser and the Board of General Appraisers that the appraised valuation was too high and that he could establish this fact if permitted to do so. Proper offers of proof were made before each tribunal and exceptions preserved. The importer was doing all he could do to obtain his day in court in this respect.

The board held that, the single general appraiser having made no appraisement, it had no jurisdiction in the matter, basing this conclusion upon a construction of the language in paragraph M, *supra*, as follows:

The decision of the general appraiser in cases of reappraisement shall be final and conclusive as to the dutiable value of such merchandise against all parties interested therein, unless the importer, owner, consignee, or agent of the merchandise shall deem the reappraisement of the merchandise too high, and shall, within 5 days thereafter, give notice to the collector, in writing, of an appeal, or unless the collector shall deem the reappraisement of the merchandise too low, and shall within 10 days thereafter appeal for re-reappraisement.

We think this holding was, likewise, erroneous. It will be observed the language of the statute is, "unless the importer * * * shall deem the reappraisement of the merchandise too high." The statute does not prescribe that such language shall be used in the application for appeal to re-reappraisement. It simply requires a mental concept by the applicant. Whether the appraisement of the local ap-

praiser was in force or vacated when the single general appraiser dismissed the appeal, the importer may have concluded the effect of such decision of the single general appraiser was to leave in effect an appraisement which was too high; the law gave him then the right to appeal, which he did.

To adhere to the narrow construction adopted here by the board would be to ignore the following language of said paragraph M:

> In such cases the general appraiser and boards of general appraisers shall proceed by all reasonable ways and means in their power to ascertain, estimate, and determine the dutiable value of the imported merchandise, and in so doing may exercise both judicial and inquisitorial functions.

This language, in so far as the board is concerned, directed it to proceed to appraise the goods and estimate, *by all reasonable ways and means,* their dutiable value.

This power was not appellate but original, and the board was directed to fix the dutiable value to the same degree that it might if nothing had been done in the way of appraisement up to that time. It was the duty of the board to appraise the goods and to do what the local appraiser and the single general appraiser might and should have done. It follows that the court below erred in holding that the reappraisement board had no jurisdiction. It should have proceeded to a hearing on the merits.

The liquidation of the collector, in view of these conclusions, was void. *Stubbs* v. *United States,* 7 Ct. Cust. Appls. 399; *United States* v. *American Express Co.,* 5 Ct. Cust. Appls. 351.

Our conclusion is that the importers' appeal to re-reappraisement is now pending before the board (now the United States Customs Court), and that said board has jurisdiction of the parties and subject matter. In the main, our conclusions coincide with those reached by the court below. Inasmuch, however, as we can not concur in its view as to the jurisdiction of the re-reappraisement board, it becomes necessary for us to reverse the judgment of the court below and to remand the cause for further proceedings in conformity with this opinion, and this will be the order.

*Reversed* and *remanded.*