DANIEL F. YOUNG, INC., ET AL. *v.* UNITED STATES

**No. 4476.**—Invoices dated Yokohama, Japan, January 13, 1936, etc.
Entered at New York February 14, 1936, etc., Los Angeles, Calif., June 10, December 5, 1935.
Entry Nos. 23559, etc., 8813, 4840.

Second Division, Appellate Term

(Decided December 16, 1938)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellants. *Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the appellee.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are applications for a review of a decision of Sullivan, Judge, reported as Reap. Dec. 4280, in favor of the Government on a number of importers' appeals for reappraisement on 22 entries made at the port of New York and 2 entries made at the port of Los Angeles, and from the order of the trial judge dated May 18, 1938, denying plaintiffs' motion for a rehearing.

The merchandise consisted of electric-light bulbs imported from Japan. They were appraised under section 209 of the Antidumping Act, 1921, the appraiser having returned the purchase price and cost of production, the difference between the two representing the dumping duties assessable on the merchandise. The sole purpose of the appeals was to avoid payment of the said antidumping duties.

At the hearing before the trial judge, counsel for the plaintiffs moved for judgment vacating the appraisement in all of the cases on the ground that said appraisements were null and void because of the failure of the collector to designate, and of the appraiser to examine, at least one out of every ten packages of the merchandise, as required by section 499 of the Tariff Act of 1930.

Both at the hearing before the trial judge and before this division sitting in review, plaintiffs conceded that, in case the court should find the appraisements to be valid, then the amounts found by the appraiser both as to purchase price and cost of production were correct.

At the hearing before the trial judge the plaintiffs offered in evidence in support of the motion to vacate the judgment the summary sheets, the invoices, entries, and all other official papers in the cases, which documents were admitted in evidence without objection of counsel for the Government. These official papers show that the following designations and examinations were made in the case of the New York entries:

| Reappt. No. | Number of packages on invoice | Number of packages designated and examined | Reappt. No. | Number of packages on invoice | Number of packages designated and examined |
|---|---|---|---|---|---|
| 112902–A | 15 | 1 | 110232–A | 105 | 5 |
| 112909–A | 31 | 1 | 111502–A | 89 | 7 |
| 112999–A | 150 | 11 | 111915–A | 104 | 5 |
| 113001–A | 57 | 5 | 111917–A | 114 | 9 |
| 120532–A | 81 | 8 | 112086–A | 93 | 9 |
| 120538–A | 36 | 3 | 112198–A | 96 | 3 |
| 120539–A | 35 | 3 | 112910–A | 86 | 6 |
| 110027–A | 24 | 2 | 113368–A | 24 | 1 |
| 110029–A | 100 | 2 | 113521–A | 126 | 7 |
| 110030–A | 35 | 3 | 113523–A | 54 | 5 |
| 110101–A | 55 | 5 | 119014–A | 192 | 8 |

The official papers also show that the following designations and examinations were made in the case of the Los Angeles entries:

| Reappt. No. | Number of packages on invoice | Number of packages designated and examined |
|---|---|---|
| 112873–A | 45 | 4 |
| 112877–A | 66 | 3 |

It should be noted, however, with respect to the Los Angeles entries, that while less than 10 per centum of the packages were designated for examination at the public stores, the collector made this additional notation on the summary sheet: "Ex. bal. at dock."

At the hearing before the trial judge counsel for the Government admitted, as to the New York importations, that less than one out of every ten packages was designated or examined, but contended that this was by virtue of a special regulation issued by the Acting Secretary of the Treasury under authority of section 499 of the Tariff Act of 1930, the pertinent portions of which read as follows:

SEC. 499. * * *

* * * The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated *unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined.* * * * [Italics ours.]

The contention of the Government made both before the trial judge and this division sitting in review was that there was a special regulation in the case of the New York entries consisting of a bound book entitled "Treasury Department—Customs Catalogue No. 3418—List of Imports, Etc.—Collector's Office—Port of New York," together with an alleged amendment thereto in the form of a telegram dated June 25, 1932, from the Acting Secretary of the Treasury to the collector of customs at the port of New York, both the book and the telegram having been admitted in evidence as Collective Exhibit 1.

The book is dated 1914, or about twenty years prior to the first of the importations herein, and was printed at the Government Printing Office in Washington. It was evidently issued for the use of the collector of customs at the port of New York, and gives a list of articles of merchandise which may be examined on the wharf at that port and a list of importations of which less than one package in every ten may be designated for examination at the United States public stores at said port. On page 3 is found the following: "List of Imports of which less than 1 package in 10 may be sent for examination to the United States public store at the port of New York,

when packed in bottles, jars, tins, cases, or tin-lined barrels." On page 71 of this book, among other items, occurs the following:

Electric-light bulbs, however packed, one each invoice.
 lamps, however packed, one each invoice.

The telegram referred to above reads as follows:

*June 25, 1932.*

COLLECTOR CUSTOMS,
 *New York, N. Y.*

General Rule page Three Customs Catalogue Thirty four Eighteen at head of list of imports changed to read as follows: Quote *In the opinion of the Secretary of the Treasury* the examination at the Appraisers Stores on the wharf or elsewhere of samples or representative packages although constituting a less proportion than ten percent of the shipment is considered amply sufficient to protect the revenue when merchandise is bought by sample or is imported in packages of same contents and value or when purchased at the same price per unit of weight gauge or measure but in no case shall less than one percent be examined except upon specific authority from the Department Unquote.

(Signed) S. LOWMAN,
*Acting Secretary of the Treasury.*
[Italics ours.]

It is contended by the plaintiffs that the customs catalog 3418 was not a special regulation within the meaning of said section 499, citing the case of *United States* v. *Gilson Bros.*, 20 C. C. P. A. 117, T. D. 45753. In that case less than one package of every ten packages of Kraft paper was designated by the collector for examination, and the Government, as in the case at bar, introduced in evidence catalog 3418 in support of its claim that the Secretary of the Treasury, by a special regulation, had authorized a less proportion of the packages to be examined. The Third Division of this court, speaking through Evans, Judge, Abstract 17304, 60 Treas. Dec. 1261, in passing upon said customs catalog 3418, said:

 \* \* \* A copy of that publication has been produced for the court's examination, and we find that it nowhere *claims to have been issued as an opinion of the Secretary of the Treasury that less than one package in ten will protect the revenue.* It appears to be a publication issued by the collector's office at the port of *New. York* and was printed in 1914. It therefore could not have been issued under the authority of the tariff act of 1922. [Italics ours.]

As the trial judge in the instant case has well said:

With stronger reason, in the case at bar said catalogue "could not have been issued under the authority of the tariff act of *1930.*"

In affirming the decision and judgment of this court in the case of *United States* v. *Gilson Bros., supra,* the appellate court referred to a letter from the Treasury Department dated May 12, 1914, to the collector of customs at the port of New York, mentioned by the Government in a motion for rehearing. The letter in question referred to a list submitted by the said collector of various articles of merchandise

as to which the collector stated it was not necessary that one package in ten should be designated for examination and appraisement. The letter then authorized the collector "when the circumstances of the case do not require the examination of at least one package in ten, to designate for examination and appraisement such number less than one package in ten of importations consisting of any of the commodities in the list submitted as *in your opinion the circumstances will justify.*" [Italics ours.]

The list referred to in the above letter was identical with that contained in the customs catalog 3418.

In said motion for rehearing in *United States* v. *Gilson Bros., supra,* reference was made to the following letter promulgated in T. D. 39246, 42 Treas. Dec. 85:

TREASURY DEPARTMENT, *September 21, 1922.*

*To Collectors and Other Officers of the Customs:*

All the provisions of the Customs Regulations of 1915 and all other regulations of the department now in force relative to the importation and entry of merchandise under the tariff act of October 3, 1913, and other acts, are hereby extended to the importation and entry of merchandise under the act of September 21, 1922, so far as applicable, until such time as the same may be revoked, modified, or amended by the department.

Such further regulations as are necessary will be issued promptly.

(100059) EDWARD CLIFFORD, *Assistant Secretary.*

It was claimed by the Government that these two letters constituted a special regulation within the meaning of section 499 of the Tariff Act of 1922. A motion for rehearing having been denied by this court, the appellate court in commenting thereon said:

Assuming, without deciding, that said letter of May 12, 1914, may be regarded as a special regulation, in so far as formalities are concerned, under said section 2939, Revised Statutes, we are clear that it was ineffectual to authorize the collector to designate, for the purpose of examination and appraisement, less than one package in ten of the merchandise described in each of the invoices here involved.

Said section 2939, Revised Statutes, authorizes the issuance by the Secretary of the Treasury of a special regulation permitting the designation of less than one package of merchandise in every ten for examination and appraisement only in such cases where *he* is of the opinion that the examination of a less proportion of packages will amply protect the revenue. This opinion and judgment of the Secretary, which is a prerequisite to the issuance of a special regulation, is a power that, in our opinion, could not be delegated to the collector of the port of New York.

The appellate court therefore held that there being no special regulation and the mandatory provision of section 499 not having been complied with there was no valid appraisement of any of the merchandise in question.

At the hearing in the instant case before the trial judge, however, as well as before this division sitting in review, the contention of the Government is that the telegram of June 25, 1932, cures the defect

stated by the appellate court in the *Gilson Bros.* case, *supra*, namely that the Secretary of the Treasury delegated the power vested in him by section 2939 of the Revised Statutes to the collector, which in the opinion of this court could not be done. The telegram in the instant case purports to amend the language found on page 3 of the customs catalog 3418 so as to read "in the opinion of the Secretary" an examination of less than 10 per centum of the imports listed therein is considered as amply sufficient to protect the revenue, provided that not less than 1 per centum is examined.

The trial judge found that in the instant case more than 1 per centum of the merchandise in each shipment was actually examined. He then proceeded to hold that the telegram in question in connection with customs catalog 3418 constituted a valid special regulation within the meaning of section 499 of the Tariff Act of 1930, expressing his views in the following language:

> The question arises: Is this telegram a valid special regulation permitting an examination of less than 10 per centum of the packages of electric-light bulbs? It seems to me it is. It would appear the Secretary had in mind *all* the commodities listed in the catalog, and was of opinion as such Secretary that an examination of less than 10 per centum of the packages containing any one of such commodities would be sufficient to protect the revenue. Among the commodities so listed I find electric-light bulbs; therefore, as to electric-light bulbs the Secretary, *himself*, was of opinion that an examination of less than 10 per centum of the packages containing such bulbs was sufficient to protect the revenue, provided not less than 1 per centum was examined.

Without considering the question as to whether the Secretary of the Treasury by the telegram in question could amend customs catalog 3418—a document which has been held by the Court of Customs and Patent Appeals not to be a special regulation in any sense—it is to be noted that the telegram in question does not refer to any special kind of merchandise but is a blanket order referring to all merchandise bought by sample, imported in packages of the same contents and value, or when purchased at the same price per unit of weight, gauge, or measure, which would include the great bulk of the merchandise imported at the port of New York.

This manifestly would be delegating to the collector of customs at the port of New York the determination as to what particular merchandise need not be examined as provided for in the mandatory provisions of section 499 of the Tariff Act of 1930.

In the case of *United States* v. *Gilson Bros.*, *supra*, one of the questions before the court was whether the Government was entitled to obtain a rehearing on the strength of the following letter from the Treasury Department to the collector of customs at the port of New York, dated May 12, 1914:

> SIR: The department is in receipt of your letter of the 5th instant, inclosing a list of various commodities of which it is stated that it is not necessary that

one package in ten shall always be designated for examination and appraisement, in many instances less than that number being sufficient to protect the revenue.

In view of your report and under the provisions of section 2939 of the Revised Statutes, you are hereby authorized, when the circumstances of the case do not require the examination of at least one package in ten, to designate for examination and appraisement such number less than one package in ten of importations consisting of any of the commodities in the list submitted as in your opinion the circumstances will justify.

Respectfully,

WM. J. MALBURN, *Assistant Secretary.*

It appears that attached to the original letter was a list of articles of merchandise identical with that contained in customs catalog 3418.

In holding that this letter was not a special regulation within the meaning of section 499 of the Tariff Act of 1922, the appellate court said:

\* \* \* This opinion and judgment of the Secretary, which is a prerequisite to the issuance of a special regulation, is a power that, in our opinion, could not be delegated to the collector of the port of New York.

In our opinion the telegram of the Acting Secretary of the Treasury in the instant case, taken in connection with customs catalog 3418, is a delegation to the collector of the port of New York of the opinion and judgment of the Secretary of the Treasury which the Court of Customs and Patent Appeals has held to be an unlawful delegation of power vested in the Secretary alone by the Congress.

Moreover, the effect of the said telegram, taken in connection with customs catalog 3418, is to repeal, so far as the great mass of merchandise enumerated in the various paragraphs of the Tariff Act of 1930 is concerned, the mandatory provision in section 499 of the said act enacted by the Congress for the protection of the Government revenues. If the Treasury Department is desirous of rendering inoperative this particular provision of section 499 which the Court of Customs and Patent Appeals has repeatedly held to be mandatory, the proper method to pursue is to request the Congress to amend the said section 499 to harmonize with the views of the Treasury Department. As a matter of fact, the Treasury Department has recently sought and obtained remedial legislation in this respect, as evidenced by the provisions of section 16 of the Customs Administrative Act of 1938 which provides that no appraisement made after the effective date of such act shall be held invalid on the ground that the number of packages or the required quantity of merchandise was not designated for examination, or if designated was not actually examined, unless the party claiming such invalidity shall prove such merchandise in the packages or quantities not designated for examination or not actually examined was different from that actually examined, and that the difference was such as to establish the incorrectness of the

appraiser's return of value; and then only as to the merchandise for which the value returned by the appraiser is shown to be incorrect.

Apparently the trial judge in the instant case had some doubts in his own mind as to the validity of the telegram in question for the reason that it was directed only to the collector of customs at the port of New York. In his very clear and concisely stated opinion he said:

\* \* \* I am fully aware of the holdings of the trial court, the appellate division, and the appellate court in the *Boston Paper Board* case, Reap. Dec. 3469, 66 Treas. Dec. 1324; Reap. Dec. 3670, 68 Treas. Dec. 1295; and 23 C. C. P. A. 372, T. D. 48233. In that case, the trial court, Judge Kincheloe, held a letter sent to the collector of customs at Buffalo by the Treasury Department, directing the examination of a less number of packages than one in ten of a certain commodity, provided that not less than 1 per centum of every invoice be examined except upon special instructions from the Secretary of the Treasury, was not a special regulation for the reason it was addressed to the collector of customs at Buffalo only, and not to all collectors generally. On appeal to the First Division of this court Judge Kincheloe's holding was affirmed.

The Court of Customs and Patent Appeals affirmed this holding, but did not decide whether or not the letter referred to was a special regulation, for it said (p. 375):

The trial court and the division held that said letter of the Acting Secretary of the Treasury was not a special regulation within the meaning of said section 499. We do not find it necessary to decide this question because, assuming for the purposes of this case that said letter is a special regulation, there was a failure upon the part of the collector to designate the number of packages for examination required by such letter. He designated 2 packages which is, of course, less than 1 per centum of 224 packages, inasmuch as the designation of less than 10 per centum of the packages was permitted solely under a purported special regulation by the Secretary of the Treasury, under a discretion reposed in him alone by the tariff act, the collector was bound to a strict compliance with the terms of said purported special regulation.

The trial judge then goes on to state that in the instant case the requirement contained in the telegram of the Acting Secretary of the Treasury that more than 1 per centum of the packages in each shipment should be examined was complied with, so that the decision of the Court of Customs and Patent Appeals in the case of *United States* v. *Boston Paper Board Co.*, 23 C. C. P. A. 372, T. D. 48233, *supra*, is not applicable. Inasmuch as the appellate court in that case affirmed the trial judge and the First Division of this court on other grounds, leaving undetermined the question of the validity of the letter of the Secretary of the Treasury addressed to the collector of a single port and claimed to be a special regulation, we are of the opinion that the holding of Judge Kincheloe of this division, affirmed by the First Division of this court sitting in review, would ordinarily be here controlling.

It is to be noted that the First Division, in affirming Judge Kincheloe's decision that a letter signed by the Acting Secretary of the Treasury and addressed to the collector of customs at Buffalo, was not a valid special regulation within the meaning of section 499 of the

Tariff Act of 1930, speaking through Presiding Judge McClelland (Reap. Dec. 3670, 68 Treas. Dec. 1295), said:

Judge Kincheloe, in his well-considered opinion which is amply supported by authorities cited by him, holds that the said letter, being directed to the collector of a single port, and not controlling upon the collectors of customs at other ports, was not a special regulation within the meaning of the language of section 499, *supra*, and after holding the appraisement null and void dismissed the appeal.

We see no need for elaboration on the question at issue, and therefore, without further discussion, affirm Judge Kincheloe's conclusion that the appeal be dismissed.

It is also to be noted that in his opinion the above case, published as Reap. Dec. 3469, 66 Treas. Dec. 1324, Judge Kincheloe said:

Congress, in enacting section 499 giving the Secretary of the Treasury the power by *special regulation* to permit a less number of packages for examination than one package of every invoice and less than one package of every ten packages of the merchandise, certainly meant that when he did issue such a special regulation affecting a certain imported commodity, this special regulation should apply to the same commodity imported at every port in the United States, and not to the one specific port as this alleged special regulation does, namely the port of Buffalo, N. Y. Exhibit 1, in my judgment, is not a special regulation by the Secretary of the Treasury as contemplated by said section 499, but is simply a letter signed by Seymour Lowman, Acting Secretary of the Treasury, and addressed to the collector of customs at Buffalo, N. Y. It is not addressed to "Collectors of Customs and Others Concerned" as special regulations generally are, and so far as I have been able to ascertain, is not a T. D., and so far as I am able to learn, it was never promulgated. So, being addressed to the collector of customs at Buffalo, N. Y., the alleged regulation would not be binding on the collector at any other port in the United States on the designation of the number of packages of the same kind of merchandise.

In addition to the able exposition of the law in Judge Kincheloe's opinion, we wish to point out that the effect of such a blanket suspension of the mandatory provisions covering the designation and examination of merchandise as provided in said section 499 at the port of New York, if held to be valid, would give a decided preference to the port of New York over all the other ports in the United States. When importers found that by importing their merchandise at the port of New York they could secure greater expedition in obtaining their goods through the customs due to the fact that only one instead of 10 per centum of the packages was to be examined, they would have their importations consigned to New York rather than consigned to other ports. This would constitute a preference by a revenue regulation to the port of one State over the ports of all other States, which would be contrary to the Constitution of the United States. The sixth paragraph of section 9 of article 1 of that instrument provides as follows:

No preference shall be given by any Regulation of Commerce or Revenue to the ports of one State over those of another; nor shall Vessels bound to, or from, one State, be obliged to enter, clear, or pay Duties in another.

In the recent case of *United States* v. *C. J. Tower & Sons* (*J. A. Forrest, Anderson Grain & Feed Co.*), 24 C. C. P. A. 304, T. D. 48754, where there was offered in evidence by the Government and admitted by the court a letter from the Acting Secretary of the Treasury to the collector of customs at the port of Buffalo for the examination of a less number than 10 per centum in the case of certain specifically named commodities, including bran and shorts, the Court of Customs and Patent Appeals, with two dissenting judges, said:

We are, therefore, of the opinion that by the term "special regulation" Congress intended to authorize the Secretary of the Treasury, under certain circumstances, to make a regulation apply only to a special port or ports and to *special goods* * * *. [Italics ours.]

In the instant case there was manifestly no designation of any specific articles of merchandise as there was in the case of *United States* v. *C. J. Tower & Sons et al., supra.*

For the above reasons we are, therefore, of the opinion that the telegram in question together with the customs catalog 3418 does not constitute a valid special regulation of the Secretary of the Treasury within the meaning of section 499 of the Tariff Act of 1930, and that so far as the New York entries are concerned the motion of counsel for the plaintiff for judgment vacating the appraisements of those entries on the ground that they are null and void should be granted.

In arriving at this conclusion, we are not unmindful of the recent decision of the United States Court of Customs and Patent Appeals, by a divided court, in the case of *United States* v. *C. J. Tower & Sons* (*J. A. Forrest, Anderson Grain & Feed Co.*), 24 C. C. P. A. 304, T. D. 48754. In that case the majority of the court said:

We are, therefore, of the opinion that by the term "special regulation" Congress intended to authorize the Secretary of the Treasury, under certain circumstances, to make a regulation apply only to a special port or ports and to special goods * * *

* * * * * * *

We see nothing anomalous resulting from the conclusion that by the language in controversy here Congress meant to authorize a special regulation applying to one or any number of ports. It was at one time the policy to make "special regulations" relating to this same subject matter apply only to the port of New York—section 2939 of the Revised Statutes. The language used in said section 2939 is almost identical with the language used in the latter part of section 499, *supra*, except as to its reference to the port of New York.

For the reasons stated, we are, therefore, in disagreement with the contention of the importers that Exhibit 2 shows invalidity on its face.

We are greatly impressed, however, with the dissenting opinion of Judge (now Presiding Judge) Garrett. After reference to the constitutional objection to a special regulation applicable to only one

port, to which we have already referred in this opinion, the learned judge proceeds as follows:

It seems to me, therefore, that to be a valid regulation it must be as general in its application as the statute which authorizes it, the statute itself not otherwise providing. I do not overlook the fact that there was once a provision in the statutes (Revised Statutes 2939) for special regulations, applicable to, or at, the port of New York alone (as is recited in the majority opinion); nor do I overlook the fact that such provision was expressly repealed in the Tariff Act of 1922 and that it has not since been reenacted either as to New York or as to any other named port. The majority apparently deduce from the one-time existence of the provision that there is nothing anomalous in concluding that by the language of section 499 Congress meant to authorize a special regulation applying to one or any number of ports. To my mind, the act of repealing the provision leads to a directly opposite conclusion respecting legislative intent.

\* \* \* \* \* \* \*

\* \* \* it seems to me logical to conclude that the dropping from the statutes of the provision for regulations special to one port indicates a legislative purpose to make the law and practice general and uniform as to all ports. I do not feel justified in indulging the presumption that the paper at issue (Exhibit 2) was sent to all collectors and to all ports. The paper was addressed to the Collector of Customs at Buffalo, N. Y., and its text when taken in connection with such address seems to me to limit it to that port. It says "at *your* port." [Italics mine.]

So, I do not regard Exhibit 2 as having constituted a valid regulation.

Second. Even if I were able to agree that the fact of Exhibit 2 being limited to a single port did not prevent its being a valid regulation, I am unable to agree that any promulgation such as the law contemplates was made of it. So far as the record before us discloses, the importers here involved, at the time the entries were made, had no reason even to suspect that such an instrument was in existence. There is nothing from which it may be concluded that any persons other than the writer of the document and the collector to whom it was addressed had knowledge of it.

I am unable to reconcile myself to the view that it was incumbent upon the importers, under the facts of this case, to prove that a regulation had *not* been promulgated. The existence of the paper, now asserted to be a regulation, was, so far as the record shows, solely within the knowledge of the Government officials concerned. \* \* \*

In view of the fact that since the decision in the case of *United States* v. *C. J. Tower & Sons, supra,* there has been a change in the membership of the United States Court of Customs and Patent Appeals due to the untimely death of Presiding Judge Graham, and in view of the apparent prohibition in the Constitution of the United States already referred to and to which no reference was made in the majority opinion in said case, we feel that the question of the validity of the purported special regulation, when addressed to the collector of customs at a single port, should again be presented to the United States Court of Customs and Patent Appeals.

One of the points raised in the brief of counsel for the plaintiff is that the court should have granted the plaintiff's motion for a rehearing in order to allow proof that the purported special regulation had

never been duly promulgated. We are of the opinion that the trial judge acted within his discretionary power in denying said motion. Moreover, such a rehearing was unnecessary, even from the plaintiff's point of view, as the trial judge found as a fact that the telegram of the Acting Secretary of the Treasury was addressed solely to the collector of customs at New York and not to collectors generally. Furthermore, the very language of the telegram itself and the customs catalog 3418 which it purports to amend, is conclusive evidence that its scope was limited to the port of New York.

Moreover, for the reasons so aptly stated by Judge Kincheloe in the case of *United States* v. *Boston Paper Board Co., supra,* and by Judge Garrett in his dissenting opinion in the case of *United States* v. *C. J. Tower & Sons et al., supra,* the purported special regulation in the instant case shows from its very nature that it was not promulgated in any sense of the term, so that it was not incumbent upon the plaintiff to prove that it was not promulgated.

Coming now to the Los Angeles entries, the sole question to be determined is whether the notation "Ex. bal. at dock" on the summary sheet was sufficient to prove that in addition to the less than one-tenth of the packages examined at the public stores the balance was designated for examination on the dock.

The only provision in the customs regulations for examination of merchandise on the wharf is to be found in article 307 of the Customs Regulations of 1931, as modified by T. D. 45936, 62 Treas. Dec. 333. Article 307 (c) of said regulations reads as follows:

(c) The packages to be examined shall be noted on the entry, invoice, and permit. If the merchandise is bulky the collector will direct examination on the wharf or other suitable place, subject to the approval of the appraiser. * * *

Said T. D. 45936, which is addressed "To Collectors of Customs" reads as follows:

Paragraph (c) of article 307 of the Customs Regulations of 1931, is hereby amended to read as follows:

The collector shall designate, on the permit and on the summary sheet (Customs Form 6417), the packages to be examined and may, if he deems it necessary, indicate them on the entry. If the merchandise is bulky, the collector will direct examination on the wharf or other suitable place, subject to the approval of the appraiser.

In the case of *La Choy Food Products, Inc.* v. *United States,* Reap. Dec. 4080, 72 Treas. Dec. 1008, affirmed by the Third Division of this court on May 12, 1938, in *United States* v. *La Choy Food Products, Inc.,* Reap. Dec. 4319, this court had before it the proper dutiable value of certain bamboo shoots and water chestnuts contained in hermetically sealed tin cans and imported from Hong Kong, China. It appeared that on the summary sheet there was the following lead-

pencil notation: "1 Case 10% Dock Examination." In that case the court said:

> * * * The said pencil notation of the collector would seem to indicate either that 10 per centum of the tins in the one case should be examined at the dock, or that 10 per centum of the total number of cases in that particular shipment should be examined at the dock. Either procedure, however, would be contrary to the decision of the appellate court in *Carey & Skinner* v. *United States*, 16 Ct. Cust. Appls. 382, T. D. 43118, in that, according to the uncontradicted evidence herein, the instant merchandise was neither bulky nor perishable. * * *

In the instant case it is manifest that the electric-light bulbs which constitute the imported merchandise at bar are neither bulky, as provided in the customs regulations, nor perishable, as that term has been judicially interpreted by the Court of Customs Appeals in the case of *United States* v. *Scanlan*, 5 Ct. Cust. Appls. 290, T. D. 34473; *United States* v. *Michelson & Co.*, 12 Ct. Cust. Appls. 402, T. D. 40584, and *United States* v. *Kuyper & Co.*, 15 Ct. Cust. Appls. 4, T. D. 42129.

It being uncontradicted that less than one-tenth of the packages on the invoices accompanying the entries made at Los Angeles was designated for examination and the purported designation on the dock not being authorized either by customs regulations or by judicial decisions, we must hold that the mandatory provision in section 499 of the Tariff Act of 1930 was not complied with by the customs officials at Los Angeles and that, therefore, the appraisements in the case of the Los Angeles entries were null and void, as claimed by the plaintiff.

We are not in the least impressed with the ingenious argument of counsel for the Government in the carefully prepared brief filed herein contending that there is no justiciable issue before the court in the instant case. It is true that the plaintiff concedes that, if the appraisements in the instant case should be held by the court to be valid, in that event the amounts found by the appraiser as constituting the purchase price and the cost of production for the purpose of determining the dumping duties in the instant case are correct. The plaintiff, however, contends that the appraisement in each and every one of the instant cases is null and void *ab initio* for the reason that the collector and the appraiser have not complied with the mandatory provisions of section 499 of the Tariff Act of 1930. This certainly raises a most vital justiciable controversy for determination by this court, namely, the validity of the action of the customs officials.

Upon all the facts and the law applicable thereto, and for the reasons hereinbefore stated, we hold that the appraisement in each and every one of the instant cases was illegal and, therefore, null and void *ab initio*. *United States* v. *Steffan & Sons*, 18 C. C. P. A. (Customs) 455, T. D. 44702; *United States* v. *V. W. Davis*, 20 C. C.

P. A. 305, T. D. 46087; *United States* v. *Gilson Brothers*, 20 C. C. P. A. (Customs) 117, T. D. 45753; *C. J. Tower & Sons* v. *United States*, 21 C. C. P. A. (Customs) 417, T. D. 46943; *United States* v. *George W. Beermaker, etc.*, 23 C. C. P. A. (Customs) 48, T. D. 47714; *United States* v. *Boston Paper Board Co.*, 23 C. C. P. A. (Customs) 372, T. D. 48233. The decision and judgment of the trial judge is therefore reversed.

Judgment will be rendered accordingly.